Frank D. Garrison, Ind. Bar No. 34024-49**\***
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
FGarrison@pacificlegal.org
  **\****Pro Hac Vice Pending*

*Attorney for Plaintiffs*
*Alaska Forest Association,*
*Viking Lumber Company, and*
*Alcan Timber Incorporated*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA FOREST ASSOCIATION; VIKING LUMBER COMPANY; and ALCAN TIMBER INCORPORATED,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as the Secretary of Agriculture; U.S. FOREST SERVICE; and TOM SCHULTZ, in his official capacity as Chief of the U.S. Forest Service,<br><br>Defendants. | Case No. 3:25-cv-00046 |

**COMPLAINT**

*Alaska Forest Ass'n v. USDA*        1
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 1 of 19

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 702, 706.

2. The Court has authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1361, and to compel agency action under 5 U.S.C. § 706(1).

3. Venue is proper under 28 U.S.C. § 1391(e)(1)(C) because Defendants are officers, employees, and agencies of the United States and Plaintiffs reside within the District of Alaska. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act (APA) is generally proper in "a court of competent jurisdiction").

## INTRODUCTION

4. The Tongass National Forest in Southeast Alaska once sustained a thriving timber industry. But decades of federal overreach, broken promises, and dereliction of statutorily mandated duties by executive branch agencies have slowly decimated this once thriving industry—jobs continue to evaporate, and many livelihoods have been lost.

5. This case involves the latest broken commitment by the United States Department of Agriculture (USDA) to provide sales of timber from the Tongass as mandated by the Tongass Timber Reform Act. In 2016, USDA promulgated a management plan which promised the availability of certain

amounts of old-growth timber from the Tongass annually on a fixed schedule. U.S. DEPARTMENT OF AGRICULTURE, TONGASS LAND AND RESOURCE MANAGEMENT PLAN RECORD OF DECISION, R10-MB-769I (2016), 6, https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd527420.pdf. The 2016 Management Plan provided for an evolving management policy that would, over an expanded time, transition from sales of old-growth to young-growth timber. While scientists have debated the exact definition, traditionally an "old growth" forest is "dominated by trees greater than 150 years old and [has] a complex structure containing large, live and dead trees along with a diverse group of plants, fungi, and animals." Chris Neff, *What Does "Old-Growth" Really Mean? It depends.*, New Jersey Audubon (Nov. 18, 2021) https://njaudubon.org/what-does-old-growth-really-mean-it-depends-installment-1-of-6/. Rather than a unilateral transition, which would mandate a move by the industry to young-growth timber use, at a time where there was little to no market for such timber, the 2016 Management Plan implemented an incremental transition upping the amount of young-growth timber offered and decreasing the amount of old-growth timber offered over eighteen years. Ideally, new young-growth markets would develop, without the devastation of the old-growth dependent timber industry in Southeast Alaska.

6. Yet since the 2016 Management Plan was promulgated, USDA has refused to follow either of these commitments. But worse still, the Secretary of

Agriculture ended the harvest of old-growth timber promised in the plan unilaterally—through guidance—without going through proper rulemaking channels.[1] As a result, Southeast Alaska's timber sector is on the brink of collapse.

7. Plaintiff Alaska Forest Association (AFA) is a trade organization that represents many of the small businesses, including Plaintiffs Viking Lumber and Alcan Timber, who depend on the Tongass's natural resources to sustain their and their families' livelihoods. AFA's members include not only logging companies and sawmills, but also truckers, tug and barge operators, and many others who collaboratively seek to make Southeast Alaska a thriving community.

8. Plaintiffs in this suit merely ask the court to require the executive branch to abide by the Constitution, federal law, and the USDA's own 2016 Management Plan.

**PARTIES**

9. Plaintiff AFA is a trade association representing businesses and individuals with interests in Alaska's timber industry. AFA is dedicated to

---

[1] Press Release, USDA, *USDA Announces Southeast Alaska Sustainability Strategy, Initiates Action to Work with Tribes, Partners and Communities* (July 15, 2021), https://www.usda.gov/about-usda/news/press-releases/2021/07/15/usda-announces-southeast-alaska-sustainability-strategy-initiates-action-work-tribes-partners-and.

*Alaska Forest Ass'n v. USDA*
No. 3:25-cv-00046
4
Case 3:25-cv-00046-SLG   Document 1   Filed 03/06/25   Page 4 of 19

"advancing the restoration, promotion and maintenance of a healthy, viable forest products industry, contributing to economic and ecological health in Alaska's forests and communities."[2]

10. Plaintiff Viking Lumber Company (Viking) is an AFA member and a family-owned timber company operating the last mid-sized sawmill in Southeast Alaska. Viking has 48 full-time employees and supports 140 other direct jobs. Viking is the only provider of Sitka spruce in the United States and mills other specialty timber products. Viking relies on the diverse species in old-growth timber sales from the Tongass for its business operations. Sourcing timber entirely from timber sales, the cessation of such sales directly threatens Viking's business and the jobs that it supports. See Declaration of Kirk Dahlstrom ¶ 12-13.

11. Plaintiff Alcan Timber Incorporated (Alcan) is a timber sale operator and AFA member that does business in Alaska. Supporting over 60 jobs in Alaska, Alcan supplies logs to sawmills across the State. The cessation of old growth timber sales from the Tongass directly hinders Alcan's business and the jobs it supports. Declaration of Brian Brown ¶¶ 7, 11-12.

---

[2] Alaska Forest Association, *About Us*, https://akforest.org/about/.

*Alaska Forest Ass'n v. USDA* 5
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 5 of 19

12. Defendant USDA is an agency of the United States government, under the direction and control of Defendant United States Secretary of Agriculture Brooke Rollins. Secretary Rollins is sued in her official capacity.

13. The USDA manages the Tongass National Forest (Tongass) through Defendant United States Forest Service ("Forest Service"), which is a sub-agency within the USDA and is headed by Chief Tom Schultz. Chief Schultz is sued in his official capacity.

## LEGAL BACKGROUND

### ANILCA and The Tongass Timber Reform Act

14. The Alaska National Interest Lands Conservation Act (ANILCA) was passed in 1980 as the end point of a long series of negotiations and compromises between Alaskans and conservationists. While both Alaskans and conservationists shared an interest in protecting the natural beauty of the state, Alaska residents were concerned that the industries that provide for their livelihoods could become a casualty of the conservation push. Consequently, ANILCA included a provision that the USDA would provide "four billion five hundred million board feet" of timber each decade. P.L. No. 96-587, § 705(a) (1980). The Alaskan timber industry would be preserved under this compromise.

15. Concerned that ANILCA did not adequately either protect the Tongass, nor provide for the timber industry, ANILCA was amended through

*Alaska Forest Ass'n v. USDA*  6
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 6 of 19

the passage of the Tongass Timber Reform Act in 1990. It was "a compromise measure between the House and the Senate. The House sought to eliminate mandated harvest levels, cancel the long-term Tongass timber contracts, designate more wilderness, increase fisheries protection, and apply all the requirements of the National Forest Management Act (NFMA) to the Tongass. The Senate, while supporting the goal of improved forest management and the end of timber dominance, wanted to enact less extensive reforms to minimize harms to local logging economies in southeast Alaska."[3]

16. Among other things, the TTRA requires the USDA to provide from the Tongass National Forest such timber that "(1) meets the annual market demand for timber from such forest and (2) meets the market demand from such forest for each planning cycle." 16 U.S.C. § 539d(a). Rather than requiring a strict target, the government would instead meet the market demand for timber. *See* Karen A. McCrackin, *Tenakee Springs v. Franzel and the Tongass Timber Reform Act*, 23 Envtl. L. 1143, 1149 (1993).

***USDA and the Forest Service Regulate the Tongass National Forest***

17. The USDA manages the Tongass National Forest under the TTRA and the National Forest Management Act, among other relevant legislation.

---

[3] Steven A. Daugherty, *The Unfulfilled Promise of an End to Timber Dominance on the Tongass: Forest Service Implementation of the Tongass Timber Reform Act*, 24 Envtl. L. 1573, 1578 (Oct. 1994) (footnotes omitted).

*Alaska Forest Ass'n v. USDA*　　　7
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG　　Document 1　　Filed 03/06/25　　Page 7 of 19

The TTRA places a duty on the USDA and Forest Service to meet the market demand for timber from the Tongass to the degree consistent with multiple use and sustained yield principles. 16 U.S.C. § 539d(a).

18. The multiple use and sustained yield principle requires that the National Forests are "utilized in the combination that will best meet the needs of the American people" even if "some land will be used for less than all of the resources," though there cannot be "impairment of the productivity of the land." 16 U.S.C. § 531(a). Sustained yield "means the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the national forests without impairment of the productivity of the land." 16 U.S.C. § 531(b).

## FACTUAL ALLEGATIONS

19. The Alaska Timber Industry provided approximately 3,500 jobs in 1991. Now, the timber industry in Southeast Alaska only employs about 300 people—a drop of 91%. *Southeast Alaska By The Numbers 2022*, Rain Coast Data (Sept. 2022).

20. The Forest Service estimates that the sustained yield limit for the Tongass National Forest—the amount of timber that can be removed annually in perpetuity—to be around 248 million board feet (MMBF) of timber. *See* U.S. Forest Service, *Draft Timber Resources Assessment Tongass National Forest Plan Revision* (Dec. 2024), 7.

*Alaska Forest Ass'n v. USDA*  8
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 8 of 19

21. Old growth timber is the backbone of the Tongass timber industry. There is only a "very small local market" for young growth wood in the Tongass. U.S. Forest Service, *Trajectory to Young Growth on the Tongass National Forest* (Jan. 2013). Only by including old-growth timber can the market demand for timber be met as required by the TTRA.

22. Nevertheless, in 2013, then-Secretary of Agriculture Tom Vilsack authored Memorandum 1044-009, urging the transformation of the Tongass timber industry to transition away from old-growth timber. As a result, by 2016, the U.S. Forest Service promulgated a Land and Resource Management Plan to phase out old-growth timber harvest over eighteen years.

23. But the 2016 Management Plan did not foreclose old-growth timber sales. It prescribed sales of 34 MMBF of old-growth annually for the first ten years of the plan, followed by 18 MMBF of old-growth annually for years eleven through fifteen, with 5 MMBF to be offered subsequently "to support small operators and specialty products ...." U.S. Department of Agriculture, Tongass Land and Resource Management Plan Record of Decision, R10-MB-769I (2016), 7,

https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd527420.pdf.

*Alaska Forest Ass'n v. USDA*  9
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 9 of 19

### *USDA and the Forest Service Refuse to Abide by Statutory and Regulatory Timber Commitments*

24. The USDA and the Forest Service have not fulfilled their obligations under either the TTRA or the 2016 Management Plan. Old-growth timber has not been offered to a degree that would meet either the 2016 Management Plan schedule or the TTRA's market demand requirement.

25. Despite the 2016 Management Plan, the USDA and Forest Service have not sold 10 MMBF annually. U.S. Forest Service, *Draft Timber Resources Assessment Tongass National Forest Plan Revision* (Dec. 2024), 14. The marginal amounts sold have come only from "microsales," right-of-way sales from roads, and remaining sections of previously authorized sales; not from new sales themselves. Declaration of Kirk Dahlstrom ¶ 12; Declaration of Brian Brown ¶¶ 7, 10-11.

26. While the Forest Service estimated—notably, using a system that assumed that young-growth timber transition would be effective—that demand for timber would range between 40 and 75 MMBF annually between 2015 and 2030, the Forest Service has never offered timber sufficient to meet that estimated demand. Between 2020 and 2023, the Forest Service never offered more than 5 MMBF of timber. U.S. Forest Service, *Draft Timber Resources Assessment Tongass National Forest Plan Revision* (Dec. 2024), 11, 13.

27. On July 15, 2021, then-Secretary Vilsack's Department of Agriculture announced the "Southeast Alaska Sustainability Strategy," which pledged that "[a]s a key part of Southeast Alaska Sustainability Strategy, USDA will end large-scale old growth timber sales on the Tongass National Forest and will instead focus management resources to support forest restoration, recreation and resilience, including for climate, wildlife habit and watershed improvement."[4]

28. The announcement of the Southeast Alaska Sustainability Strategy led to the immediate withdrawal of teams working on National Environmental Policy Act analyses for future timber sales in the Tongass National Forest. Declaration of Brian Brown ¶¶ 6, 10. Given the timescale necessary to complete NEPA analyses for a timber sale, this was a direct sign to industry that there were no old-growth sales coming for at least three to five years.

29. Neither USDA nor the Forest Service engaged in any final rulemaking before implementing the Southeast Alaska Sustainability Strategy.

---

[4] Press Release, USDA, *USDA Announces Southeast Alaska Sustainability Strategy, Initiates Action to Work with Tribes, Partners and Communities* (July 15, 2021), https://www.usda.gov/about-usda/news/press-releases/2021/07/15/usda-announces-southeast-alaska-sustainability-strategy-initiates-action-work-tribes-partners-and.

*Alaska Forest Ass'n v. USDA*
No. 3:25-cv-00046
11
Case 3:25-cv-00046-SLG   Document 1   Filed 03/06/25   Page 11 of 19

## *Injury to AFA and Constituent Organizations*

30. Many of Plaintiff AFA's members, including Plaintiffs Viking and Alcan, are directly in danger of going out of business due to the lack of a steady timber supply. Declaration of Brian Brown ¶¶ 6, 12.

31. Viking supports 48 full-time year-round employees, and over 140 other direct jobs. Yet Viking is unable to keep those employees hired and to remain in business without sufficient old-growth timber sales. Viking requires 22 MMBF to remain in business. Declaration of Kirk Dahlstrom ¶ 5. With the federal government controlling nearly eighty percent of land in Southeast Alaska, USDA and the Forest Service's actions effect whether Viking can provide such timber. Viking estimates that absent sufficient supplies of old-growth timber as would have potentially occurred if USDA and the Forest Service provided timber sales in accordance with the 2016 Management Plan, it will be required to shut down a mill estimated to be worth twenty million dollars. It simply will not be able to remain in business in Southeast Alaska. Declaration of Kirk Dahlstrom ¶¶ 5, 14.

32. Alcan supports over sixty jobs in the state of Alaska and consistently hires contractors for timber operations such as logging, road construction, timber falling, log hauling, towing, and longshoring. Declaration of Brian Brown ¶¶ 4-5. Alcan owns no timber lands of its own, but depends on timber sales, including—as the largest forest owner in Southeast Alaska—the

federal government. Absent continued sales of timber from the Tongass, Alcan will not be able to continue its business in Southeast Alaska. *Id.* ¶ 12.

33. But for USDA and the Forest Service's illegal actions failing to meet market demands as required by the TTRA (and the 2016 Management Plan), Plaintiffs would have been able to sell more timber to the market, thus making profits that were lost because of USDA and the Forest Service's failure to act.

## CLAIMS FOR RELIEF

### COUNT I: Violation of the APA
### (Illegal Rulemaking and Failure to Act)
### (5 U.S.C. § 706(1), (2)(C), (D))

34. The preceding paragraphs are incorporated by reference.

35. The APA allows a court to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

36. The APA requires this Court to hold unlawful and set aside any agency action that exceeds statutory authority. 5 U.S.C. § 706(2)(C).

37. The APA requires this Court to hold unlawful and set aside any agency action that is without observance of procedure required by law. 5 U.S.C. § 706(2)(D).

38. The USDA and the Forest Service are bound under the National Forest Management Act to "develop, maintain, and, as appropriate, revise land

*Alaska Forest Ass'n v. USDA* 13
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 13 of 19

and resource management plans," 16 U.S.C. § 1604(a), which was complied with under the 2016 Management Plan.

39. The Southeast Alaska Sustainability Strategy—altering the substantive requirements of the 2016 Management Plan—is functionally a rule that required notice and comment rulemaking.

40. The USDA and Forest Service, by ending old-growth timber sales as mandated by the 2016 Management Plan and removing the agency employees responsible for conducting NEPA analysis under the Southeast Alaska Sustainability Strategy, have acted in such a way that revealed it is binding. The agencies have also failed to provide old-growth timber sales in line with the 2016 Management Plan based on these actions and thus have violated the APA.

### COUNT II: Violation of the APA
### (Arbitrary and Capricious Action)
### (5 U.S.C. § 706(2)(A))

41. The preceding paragraphs are incorporated by reference.

42. In refusing to follow the 2016 Management Plan and amending the substantive requirements of that plan through guidance, the USDA and Forest Service have acted arbitrarily and capriciously.

43. When an agency changes course, such agency must consider whether reversing "longstanding policies may have 'engendered serious reliance interests.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*,

*Alaska Forest Ass'n v. USDA* 14
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 14 of 19

591 U.S. 1, 30 (2020) (citation omitted). Ignoring such reliance interests are arbitrary and capricious. *Id.* (citing *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009)).

44. Plaintiffs have legitimate reliance interests in the 2016 Management Plan's substantive provisions for the offering of old-growth timber from the Tongass.

45. That a program does not confer substantive private rights is not relevant for creating reliance interests: there is no "legal authority establishing that such features automatically preclude reliance interests …." *Regents of the Univ. of California*, 591 U.S. at 31.

46. Plaintiffs relied on the 2016 Management Plan. Yet that Management Plan was simply not followed. Defendants thus have "acted in an 'arbitrary' way by telling … one thing and then doing another." *Kentucky v. EPA*, 123 F.4th 447, 452 (6th Cir. 2024).

47. Plaintiff Viking employs 40 locals and supports over 140 other direct jobs. Declaration of Kirk Dahlstrom ¶ 8. Plaintiff Alcan supports 60 jobs in the state of Alaska and supplies timber to mills in Southeast Alaska. Declaration of Brian Brown ¶ 4. Alcan relies entirely on sourcing timber from timber sales. *Id.* ¶ 6. Absent sales of old-growth timber as outlined in the 2016 Management Plan, Alcan and Viking's business will continue to suffer.

*Alaska Forest Ass'n v. USDA*  15
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG   Document 1   Filed 03/06/25   Page 15 of 19

48. Plaintiffs, including many members of Plaintiff AFA like Viking and Alcan, relied on the 2016 Management Plan in making decisions for their businesses and planning on how to organize their businesses going forward. By illegally deviating from the 2016 Management Plan without considering Plaintiffs' reliance interests, Defendants have acted arbitrarily and capriciously.

### COUNT III: Violation of the APA (Ultra Vires Agency Action and Failure to Act in Compliance with the Tongass Timber Reform Act 16 U.S.C. § 539d) (5 U.S.C. § 706(1), (2)(A))

49. The preceding paragraphs are incorporated by reference.

50. The TTRA requires the Secretary "to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources, seek to provide a supply of timber from the Tongass National Forest which (1) meets the annual market demand for timber from such forest and (2) meets the market demand from such forest for each planning cycle." 16 U.S.C. § 539d(a).

51. The Forest Service estimates that the annual market demand for the Tongass National Forest is between 2015 and 2030 to range between 40.8 MMBF to 76.4 MMBF, depending on the model used. Between 2017 and 2023, annual demand ranged between 45 and 58 MMBF, depending on the

*Alaska Forest Ass'n v. USDA*
No. 3:25-cv-00046
16
Case 3:25-cv-00046-SLG   Document 1   Filed 03/06/25   Page 16 of 19

model used. U.S. Forest Service, *Draft Timber Resources Assessment Tongass National Forest Plan Revision* (December 2024), 11.

52. The USDA and Forest Service have failed to meet this demand as required by the TTRA and have thus violated the statute's requirements and the APA.

53. The USDA and Forest Service have also sought to exercise unauthorized discretion in policymaking by foreclosing the sale of old-growth timber outside of Congress's statutory mandate that the agencies provide certain amounts of timber under the TTRA.

54. Article IV of the U.S. Constitution delegates Congress the power to make all rules and regulations concerning territories or property of the United States.

55. Congress cannot grant the President or executive branch agencies the power to indefinitely modify or nullify duly enacted law. *Clinton v. City of New York*, 524 U.S. 417, 436-47 (1998). When an agency claims broad authority to exercise powers of vast economic and political significance, it "must point to 'clear congressional authorization' for the power it claims." *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). In the absence of such a clear statement, the agency necessarily lacks the authority it claimed. *See id.*

56. Ending all old-growth timber harvesting on the Tongass is an issue of "vast economic … significance." *West Virginia*, 597 U.S. at 716.

57. Since the adoption of the 2016 Management Plan, the USDA and Forest Service have implemented an ultra vires policy not authorized by Congress and have never met the market demand for timber from the Tongass National Forest. U.S. Forest Service, *Draft Timber Resources Assessment Tongass National Forest Plan Revision* (Dec. 2024), 13.

58. These actions are ultra vires and violate the APA.

## PRAYER FOR RELIEF

Plaintiffs pray for relief as follows:

1. A judgment declaring the Southeast Alaska Sustainability Strategy to be (1) an unlawful and unenforceable agency action; (2) that was arbitrary and capricious; and (3) without observance of procedure required by law, and in excess of statutory jurisdiction, authority, or limitations and thus the 2016 Management Plan is still binding;

2. A judgement declaring that the USDA and Forest Service have acted ultra vires and failed to act in conformity to their duty under the TTRA to provide old-growth timber that meets market demand;

3. A mandatory injunction compelling the Defendants to abide by the TTRA and 2016 Management Plan and to offer a sale of old-growth timber in compliance with its duty in accordance with the APA;

*Alaska Forest Ass'n v. USDA*  18
No. 3:25-cv-00046
Case 3:25-cv-00046-SLG   Document 1   Filed 03/06/25   Page 18 of 19

4. An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

5. Any other relief the Court deems just and proper.

DATED: March 6, 2025.

Respectfully submitted,

/s/ Frank D. Garrison
FRANK D. GARRISON
*Pro Hac Vice Pending*
Ind. Bar No. 34024-49

*Attorney for Plaintiffs
Alaska Forest Association,
Viking Lumber Company, and
Alcan Timber Incorporated*

*Alaska Forest Ass'n v. USDA*
No. 3:25-cv-00046
19
Case 3:25-cv-00046-SLG    Document 1    Filed 03/06/25    Page 19 of 19