ADAM R.F. GUSTAFSON
United States Department of Justice
Acting Assistant Attorney General
Environment & Natural Resources Division

SHAUN M. PETTIGREW (CA Bar No. 254564)
Senior Trial Attorney
Natural Resources Section
c/o NOAA, Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
(202) 532-5973
shaun.pettigrew@usdoj.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ALASKA FOREST ASSOCIATION; VIKING LUMBER COMPANY; AND ALCAN TIMBER INCORPORATED, | ) ) ) ) | Case No. 3:25-cv-00046-SLG |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| U.S. DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of the Department of Agriculture; U.S. FOREST SERVICE, and TOM SCHULTZ, in his official capacity as Chief of the U.S. Forest Service, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

      A.    Legal Background ................................................................................... 2

      B.    Factual Background ................................................................................ 4

III.  STANDARD OF REVIEW .................................................................................. 7

IV.   ARGUMENT ....................................................................................................... 8

      A.    Plaintiffs Cannot Compel Agency Action under Section 706(1) of the
            APA Because They Have Not Identified a Discrete Agency Action the
            Forest Service is Required to Take. ........................................................ 8

            1.    The Tongass National Forest's timber harvest program is not a
                  discrete agency action. .................................................................. 9

            2.    The Forest Service is not legally required to provide a specific
                  amount of old-growth timber from the Tongass National
                  Forest. ......................................................................................... 10

                  a.    The Tongass Timber Reform Act ........................................ 11

                  b.    Tongass Forest Plan ............................................................ 13

      B.    Plaintiffs' Challenge to the Southeast Alaska Sustainability Strategy
            under Section 706(2) of the APA Fails. ................................................ 15

V.    CONCLUSION ................................................................................................. 17

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Wilderness Rec. & Tourism Ass'n v. Morrison,*
67 F.3d 723 (9th Cir. 1995) ........................................................2, 3, 12, 14

*American Forest Resource Council v. United States,*
77 F.4th 787 (D.C. Cir. 2023).................................................................9, 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................7

*City of Tenakee Springs v. Franzel,*
960 F.2d 776 (9th Cir. 1992) .....................................................................11

*Hells Canyon Pres. Council v. U.S. Forest Serv.,*
593 F.3d 923 (9th Cir. 2010) ...................................................................7, 9

*In re Big Thorne Project,*
857 F.3d 968 (9th Cir. 2017) .....................................................................14

*Lujan v. Nat'l Wildlife Fed.,*
497 U.S. 871 (1990).....................................................................................16

*Nat. Res. Def. Council v. U.S. Forest Serv.,*
421 F.3d 797 (9th Cir. 2005) ...............................................................2, 3, 12

*Norton v. S. Utah Wilderness All.,*
542 U.S. 55 (2004).................................................................................passim

*Perkins v. Bergland,*
608 F.2d 803 (9th Cir. 1979) ..................................................................3, 11

*Plaskett v. Wormuth,*
18 F.4th 1072 (9th Cir. 2021) ......................................................................7

*Se. Conf. v. Vilsack,*
684 F. Supp. 2d 135 (D.D.C. 2010) ...........................................................10

*Sierra Club v. Hardin,*
325 F. Supp. 99 (D. Alaska 1971) ................................................................3

*Staacke v. U.S. Dep't of Labor,*
841 F.2d 278 (9th Cir. 1988) .....................................................................13

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) .......................................................................8

ii

*Vietnam Veterans of Am. v. CIA,*
  811 F.3d 1068 (9th Cir. 2016) ..............................................................8, 9

*Whitewater Draw Nat. Res. Conserv. Dist. v. Mayorkas,*
  5 F.4th 997 (9th Cir. 2021) ..................................................................16

**Statutes**

16 U.S.C. § 1604(e)(1) ..............................................................................2

16 U.S.C. § 528 .........................................................................................2

16 U.S.C. § 531(a) .....................................................................................2

16 U.S.C. § 531(b) .....................................................................................2

16 U.S.C. § 539d (1980) ...........................................................................3

16 U.S.C. § 539d(a) ............................................................................3, 11

43 U.S.C. § 2601 .......................................................................................9

5 U.S.C. § 551(13) ...............................................................................7, 16

5 U.S.C. § 701 ..........................................................................................16

5 U.S.C. § 702 ..........................................................................................16

5 U.S.C. § 706(2) ......................................................................................13

5 U.S.C. §706(1) .........................................................................................7

For the below stated reasons, Defendants hereby move to dismiss the Plaintiffs'
Complaint (ECF No. 1) under Rule 12(b)(6) of the Federal Rules of Civil Procedure and
request that judgment with prejudice be entered in their favor.

## I.     INTRODUCTION

Thirty-five years ago, Congress made clear in the Tongass Timber Reform Act
(TTRA) that the Forest Service is to manage the Tongass National Forest for multiple
uses and sustained yield while also seeking to meet market demand for timber. Since
then, courts have routinely and uniformly explained that the TTRA vests the Forest
Service with broad discretion in managing timber and other resources on the Tongass
National Forest and does not require an inflexible harvest level. Nevertheless, Plaintiffs
bring this case inviting the Court to find the exact opposite and to compel the Forest
Service to provide an inflexible harvest level of old-growth timber.

The Court should reject this invitation because Plaintiffs' Complaint fails to state a
claim for two independent reasons. First, Plaintiffs improperly challenge the Forest
Service's timber program on the Tongass National Forest. Such a programmatic
challenge is not cognizable under the Administrative Procedure Act (APA) because it is
not "agency action." Second, Plaintiffs cannot compel agency action under the APA
because neither the TTRA nor the forest plan for the Tongass National Forest impose a
nondiscretionary duty on the Forest Service to provide a particular amount of old-growth
timber. For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

1

## II. BACKGROUND

### A. Legal Background

The Forest Service manages National Forest System (NFS) lands under a broad multiple-use mandate. The Multiple-Use Sustained-Yield Act (MUSYA) of 1960 requires "the national forests" to be "administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. And the National Forest Management Act (NFMA) of 1976 requires forest plans to "provide for multiple use and sustained yield of the products and services obtained" from NFS lands "in accordance with [MUSYA]." 16 U.S.C. § 1604(e)(1). In doing so, the Forest Service "balance[s] competing demands on national forests, including timber harvesting, recreational use, and environmental preservation." *Nat. Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 801 (9th Cir. 2005) (citation omitted). The Forest Service "articulates general goals through a Forest Plan," and then implements the forest plan through site-specific projects. *Alaska Wilderness Rec. & Tourism Ass'n v. Morrison*, 67 F.3d 723, 726 (9th Cir. 1995).

"'Multiple use management' is a deceptively simple term that describes the enormously complicated task of striking a balance among the many competing uses to which land can be put." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 59 (2004); *see also* 16 U.S.C. § 531(a). And managing land for "'sustained yield,' requires [an agency] to control depleting uses over time, so as to ensure a high level of valuable uses in the future." *Norton*, 542 U.S. at 58; *see also* 16 U.S.C. § 531(b). Recognizing the complexity of managing NFS lands for multiple uses and sustained yield, courts have long confirmed that the Forest Service has broad discretion in deciding the proper mix of uses on NFS

2

lands. *See Perkins v. Bergland*, 608 F.2d 803, 806-07 (9th Cir. 1979) (explaining

MUSYA's language "can hardly be considered concrete limits upon agency discretion"

because it "breathe[s] discretion at every pore."); *see also Sierra Club v. Hardin*, 325 F.

Supp. 99, 124 n. 48 (D. Alaska 1971) ("Congress has given no indication as to the weight

to be assigned each value and it must be assumed that the decision as to the proper mix of

uses within any particular area is left to the sound discretion and expertise of the Forest

Service.").

> Congress enacted the TTRA in 1990. The TTRA provides, in relevant part:

> Subject to appropriations, other applicable law, and the requirements of the National Forest Management Act of 1976 (Public Law 94-588) . . . the Secretary shall, to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources, seek to provide a supply of timber from the Tongass National Forest which (1) meets the annual market demand for timber from such forest and (2) meets the market demand from such forest for each planning cycle.

16 U.S.C. § 539d(a). This language envisions "a balancing of the market, the law, and

other uses, including preservation." *Morrison*, 67 F.3d at 731; *see also Nat. Res. Def.*

*Council*, 421 F.3d at 801 n.7 (characterizing TTRA as a "refinement of the general

requirement under NFMA that the Forest Service consider timber harvest as one of the

goals to be balanced with environmental preservation and use.").[1]

---

[1] The 1980 Alaska National Interest Land Conservation Act (ANILCA) authorized and sought to fund maintenance of a specific level of timber harvest on the Tongass. *See* 16 U.S.C. § 539d (1980). The TTRA amended ANILCA specifically to remove this provision, which had "given the timber resource on the Tongass prominence over other resources" despite "clear direction that the various uses and resources of the national forests should be carefully balanced." *See* S. Rep. 101-261, at 9 (1990); *see Morrison*, 67 F.3d at 725.

### B.  Factual Background

The Forest Service manages the Tongass National Forest under a forest plan amended in 2016 (Forest Plan). *See* Forest Plan, attached as Ex. 1.[2] The Forest Plan sets forth desired conditions, goals, and objectives. *Id.* at 11. Desired conditions "are desired landscape attributes that describe the mosaic of land and resource conditions envisioned for the Forest during the life of the Forest Plan." *Id.*; *see also id.* at 292. Goals "are expressed in broad, general terms," describing "the desired conditions sought to be attained during the life of th[e] Plan." *Id.* at 11; *see also id.* at 303. And objectives "are expected to be achieved during the life of th[e] Plan to help accomplish Forest-wide multiple use goals, and work toward attaining Forest desired conditions." *Id.* at 11; *see also id.* at 318 ("The steps to be taken and the resources to be used in achieving goals.").

In addition to the prospective, aspirational desired conditions, goals, and objectives, the Forest Plan also sets forth certain mandatory standards and guidelines. *See id.* at 258 ("both standards and guidelines are now mandatory constraints").[3] A standard is a "mandatory constraint on project and activity decision-making, established to help achieve or maintain the desired condition or conditions." *Id.* at 339; *see also id.* at 258. A guideline is a "constraint on project and activity decision-making that allows for departure from its terms, so long as the purpose of the guideline is met." *Id.* at 304; *see*

---

[2] The Complaint incorporates the Forest Plan by reference. *See* Compl. ¶¶ 5, 22, ECF No. 1. Citations in this memorandum are to the page of the exhibit.

[3] The Forest Plan contains guidelines developed under both the Forest Service's 1982 and 2012 Planning Rules. Guidelines developed under the 2012 Planning Rule are mandatory while those developed under the earlier planning rule are not. *See* Forest Plan at 10-11.

*also id.* at 258. Like standards, guidelines "are established to help achieve or maintain a desired condition or conditions." *Id.* at 304.

The 2016 amendments to the Forest Plan were intended to "accelerat[e] the transition from a primarily old growth to a primarily young-growth timber program."[4] Forest Plan Record of Decision (ROD) 12, attached as Ex. 2.[5] To do this, the Forest Plan sets forth an objective that "[d]uring the 15 years after plan approval, the amount of young-growth offered would gradually increase to exceed 50 percent of the timber offered annually." Ex. 1 at 259 (O-YG-01). Another objective similarly provides that "[d]uring the 15 years after plan approval, offer increasing annual volumes of economically viable young-growth timber. Old-growth timber harvest would gradually be reduced to an average of 5 million board feet (MMBF) annually, to support Southeast Alaska mills." *Id.* at 260 (O-YG-02).

Consistent with this transition to a young-growth timber program, and acknowledging the requirements of the TTRA, the Forest Plan also includes the following two objectives:

---

[4] "Old-growth forests are defined in many ways; generally, structural characteristics used to describe old-growth forests include a) live trees: number and minimum size of both seral and climax dominants; b) canopy conditions: commonly including multi-layering; c) snags: minimum number and specific size; and d) logs and large (coarse) woody debris." Ex. 1 at 318. Young-growth forests are those that have "been regenerated naturally or artificially after some drastic interference such as extensive cutting, wildfire, insect or disease attack, or blowdown (Helms 1998). On the Tongass a forest younger than 150 years is considered young-growth forest." *Id.* at 350.

[5] The Complaint incorporates the ROD by reference. *See* Compl. ¶¶ 5, 23. Citations in this memorandum are to the page of the exhibit.

**O-TIM-01**: Seeking to accelerate a transition to primarily young-growth harvest, offer an average of 46 MMBF annually in a combination of old growth and young growth. When young-growth offered is less than 41 MMBF, provide old growth to make up the difference and achieve the average annual projected timber sale quantity of 46 MMBF. After the transition, offer an average of 5 MMBF of old growth annually to support Southeast Alaska mills.

**O-TIM-02**: Seek to provide an economic timber supply sufficient to meet the annual market demand for Tongass National Forest timber, and the market demand for the planning cycle. The volume of young growth as part of the yearly offer will increase from an average of 9.2 MMBF annually in the first decade to an average of 25 MMBF annually in years 11-15 as the program nears full transition.

*Id.* at 270-71. The Forest Plan contains no standards or guidelines—or any other management direction—that requires the Forest Service to offer a specific quantity or type of timber for harvest.

On July 15, 2021, the U.S. Department of Agriculture issued a press release announcing a Southeast Alaska Sustainability Strategy "to help support a diverse economy, enhance community resilience, and conserve natural resources." Press Release 1, attached as Ex. 3.[6] The press release indicated that a key part of that strategy was to reallocate "management resources" by ending "large-scale old growth timber sales on the Tongass National Forest," while continuing to offer "[s]mall and micro old growth sales."[7] *Id.* The press release did not amend or otherwise alter any provisions of the Forest Plan.

---

[6] The Complaint incorporates the press release by reference. *See* Compl. ¶¶ 6 n.1, 27 n.4.

[7] Plaintiffs acknowledge that the Forest Service has continued to offer some old-growth timber. Compl. ¶ 25.

6

## III.    STANDARD OF REVIEW

Because neither the TTRA nor NFMA provide for a private right of action, claims brought under those statutes arise under the APA. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 929 (9th Cir. 2010) (citing 5 U.S.C. § 702). "The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Plaskett v. Wormuth*, 18 F.4th 1072, 1081 (9th Cir. 2021) (quoting *Norton*, 542 U.S. at 61). "'[A]gency action' is defined to include 'failure to act,' and in a suit brought by an aggrieved person over such a failure to act, the APA expressly authorizes a court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. §§ 551(13), 706(1)).

A failure to allege "agency action" requires a complaint to be dismissed for failure to state a claim under Rule 12(b)(6). *See id.* at 1082-83. In reviewing a complaint under Rule 12(b)(6), a court considers whether, "taking all well-pleaded factual allegations as true, it contains enough facts to state a claim to relief that is plausible on its face." *Id.* at 1083 (citation omitted). Questions of law under this standard are considered de novo, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In considering a motion to dismiss for failure to state a claim, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss

7

into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. ARGUMENT

### A. Plaintiffs Cannot Compel Agency Action under Section 706(1) of the APA Because They Have Not Identified a Discrete Agency Action the Forest Service is Required to Take.

Plaintiffs' Complaint alleges three counts under the APA, all of which assert that the Forest Service has unlawfully failed to offer sufficient old growth timber for sale. *See* Compl. ¶ 40 (Count 1: "The agencies have also failed to provide old-growth timber sales in line with the [Forest Plan] based on these actions and thus have violated the APA."); ¶¶ 42, 46 (Count 2: claiming Forest Service failed to offer old growth for sale as required by the Forest Plan); ¶ 52 (Count 3: "The USDA and Forest Service have failed to meet this demand as required by the TTRA and have thus violated the statute's requirements and the APA."). In other words, the gravamen of Plaintiffs' Complaint is an alleged failure to act by the Forest Service. Plaintiffs' request for a "mandatory injunction compelling the Defendants to abide by the TTRA and [Forest Plan] and to offer a sale of old-growth timber in compliance with its duty in accordance with the APA" makes that clear. Compl. Prayer for Relief ¶ 3. Such claims are addressed under section 706(1) of the APA.

A court can compel action under section 706(1) "only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1075-76 (9th Cir. 2016) (quoting *Norton*, 542 U.S. at 63-64). And the "agency action

must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Id.* (quoting *Hells Canyon Pres. Council*, 593 F.3d at 932). In short, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. Plaintiffs have alleged neither a discrete agency action nor an action the Forest Service is required to take. Their claims under section 706(1) fail.

### 1. The Tongass National Forest's timber harvest program is not a discrete agency action.

Plaintiffs do not challenge a discrete agency action. Instead, they challenge the Tongass National Forest's entire program of timber harvest activities. This contravenes the Supreme Court's admonition in *Norton* that the "limitation to discrete agency action precludes th[is] kind of broad programmatic attack." *Id.* Indeed, the D.C. Circuit recently relied on *Norton* to reject the precise type of claim that Plaintiffs make here. This Court should do the same.

The plaintiffs in *American Forest Resource Council v. United States*, 77 F.4th 787, 804 (D.C. Cir. 2023), sought to require the Bureau of Land Management to "sell or offer for sale the declared annual sustained yield capacity" of timber every year based on a statute that provided such capacity "shall be sold annually, or so much thereof as can be sold at reasonable prices on a normal market." *Id.* (quoting 43 U.S.C. § 2601). Rejecting that claim, the court described the agency's "complex process of planning, preparing and selling a timber contract," and explained that "the total timber volume the [agency] offers

for sale in a given year is thus not a discrete agency action. Instead, it is a measurement—a synthesis of multiple sales made over several years." *Id.* at 804-05.

The same is true here. Plaintiffs claim the Forest Service must offer more old-growth timber volume to meet various purported legal duties. But this is merely a challenge to the total old-growth timber volume the Forest Service offers from the Tongass National Forest. *See Se. Conf. v. Vilsack*, 684 F. Supp. 2d 135, 147 (D.D.C. 2010) ("[T]he Forest Service seeks to meet market demand through a mix of timber available for sale, timber sold but not yet harvested, and timber that is being planned for sale."). It is not a challenge to discrete agency action. For this reason alone, Plaintiffs' claims should be dismissed.

### 2. The Forest Service is not legally required to provide a specific amount of old-growth timber from the Tongass National Forest.

Even if Plaintiffs had challenged a discrete agency action, they have identified no action that the Forest Service has failed to take that it was legally required to take. Section 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." *Norton*, 542 U.S. at 64 (internal quotation marks and citation omitted). "Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65. Even where a legal requirement "is mandatory as to the object to be achieved," agency action cannot be compelled under section 706(1) if an agency has "discretion in deciding how to achieve [that object]." *Id.*

at 66. Neither the TTRA nor the Forest Plan impose a ministerial, non-discretionary duty on the Forest Service to provide a specific quantity of old-growth timber.

### a. The Tongass Timber Reform Act

The TTRA does not supplant the Forest Service's duty to manage the Tongass National Forest for multiple uses and sustained yield. In fact, the TTRA expressly requires such management. Under the TTRA, the Forest Service remains "[s]ubject to . . . the requirements of [NFMA]," and must implement the statute "consistent with providing for the multiple use and sustained yield of all renewable foreset resources." 16 U.S.C. § 539d(a); *see also City of Tenakee Springs v. Franzel*, 960 F.2d 776, 779 (9th Cir. 1992) ("The TTRA mandates that the Forest Service must plan in a way that will fulfill both its contractual commitments and its statutorily mandated environmental commitments, not one at the expense of the other."). This multiple use, sustained yield directive "can hardly be considered [as placing] concrete limits upon agency discretion" because it "breathe[s] discretion at every pore." *Perkins*, 608 F.2d at 806-07 (citation omitted). For this reason alone, the TTRA does not impose a non-discretionary duty on the Forest Service to offer a specific quantity of old-growth timber from the Tongass National Forest.

Further, even absent this multiple-use directive, the TTRA's stated timber objectives are also infused with discretion, making them unenforceable under section 706(1). The TTRA obligates the Forest Service to "*seek to* provide a supply of timber from the Tongass National Forest" to meet annual and planning cycle "market demand." 16 U.S.C. § 539d(a) (emphasis added). The discretion in this language is self-evident, and courts have consistently rejected attempts to engraft onto the TTRA a substantive

11

obligation to provide "an inflexible harvest level," concluding instead that the statute contemplates the Forest Service's "balancing of the market, the law and other uses, including preservation." *Morrison*, 67 F.3d at 731; *see also Nat. Res. Def. Council*, 421 F.3d at 809 ("[T]he TTRA gives flexibility to the Forest Service to choose among various site-specific plans" (internal quotation marks and citation omitted)); *Alaska Forest Ass'n v. U.S. Dep't of Agric.*, J99-cv-0013, slip op. at 28 (D. Alaska Mar. 30, 2001) ("The 'seek to meet' market demand provision in TTRA is discretionary as to the Forest Service"), attached as Ex. 4; *Alaska Forest Ass'n v. United States*, J94-cv-007, slip op. at 1-2 (D. Alaska Oct. 19, 1995) (noting the TTRA did not create enforceable duty to make timber available for harvest, but instead continued "an admonition to be considered together with other goals in establishing a timber plan for the Tongass."), attached as Ex. 5.

Stated differently, while the TTRA "is mandatory as to the object to be achieved," (i.e., seeking to meet market demand), "it leaves [the Forest Service] a great deal of discretion in deciding how to achieve it," and "assuredly does not mandate, with the clarity necessary to support judicial action under § 706(1)," an inflexible harvest level. *Norton*, 542 U.S. at 66. To hold otherwise would subject the Forest Service to "undue judicial interference with [its] lawful discretion," result in "judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve," and improperly make it the job "of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Id.* at 66-67. Just like the statute at issue in *Norton*, the TTRA vests the agency with broad discretion to achieve the object of the statute and cannot

serve as the basis for compelling action under section 706(1).[8] *See id.* at 65-67 (statutory mandate to "continue to manage [wilderness study areas] . . . in a manner so as not to impair the suitability of such areas for preservation as wilderness" unenforceable under section 706(1)).

### b. Tongass Forest Plan

The same holds true for the Forest Plan. As *Norton* explained, final agency action inconsistent with a land use plan "can be set aside as contrary to law pursuant to 5 U.S.C. § 706(2)." 542 U.S. at 69. But a statement in such a plan that an agency "'will' take this, that, or the other action" does not establish a "binding commitment that can be compelled under § 706(1)," at least without a "clear indication of binding commitment in the terms of the plan." *Id.* This forbids "general enforcement of plan terms" because such enforcement "would lead to pervasive interference with [the agency's] own ordering of priorities." *Id.* at 71. Instead, "'will do' projections of agency action set forth in land use plans . . . are not a legally binding commitment enforceable under § 706(1)." *Id.* at 72.

Plaintiffs point to no Forest Plan provision that provides a binding commitment by the Forest Service to provide a specific amount of old-growth harvest. Indeed, Plaintiffs point to no Forest Plan provision at all. Paragraph 23 of the Complaint alleges that the

---

[8] For the same reasons, Plaintiffs' assertion that the Forest Service has acted ultra vires by not providing a specific quantity of old-growth timber allegedly required by the TTRA is misguided. *See* Compl. ¶ 57. The TTRA does not provide a statutory mandate to the Forest Service to provide a specific quantity of old-growth timber for sale that the Forest Service has "transgressed." *See Staacke v. U.S. Dep't of Labor*, 841 F.2d 278, 282 (9th Cir. 1988) (noting ultra vires review "is limited to determining whether the statute in question contains a clear command that the [agency] has transgressed.").

Forest Plan "prescribed sales of 34 MMBF of old-growth annually for the first ten years of the plan, followed by 18 MMBF of old-growth annually for years eleven through fifteen, with 5 MMBF to be offered subsequently 'to support small operators and specialty products . . . ." Compl. ¶ 23 (quoting ROD). But this allegation cites estimates contained in the ROD, not a term of the Plan. Further, even if the estimates alleged in this paragraph were a term of the Plan, they would not constitute a binding commitment. Instead, they merely reflect the Forest Service's expectations of "the estimated quantity of timber to be sold." Ex. 2 at 14. Such expectations would be at most aspirational "will do" statements that are not enforceable under section 706(1).

And although not cited by Plaintiffs, the Forest Plan objectives related to old-growth similarly would not support a binding commitment to provide a certain amount of old-growth timber at a particular time. On the contrary, objectives reflect the aspirational steps to be taken and the resources to be used in achieving goals and desired conditions during the entire life of the Forest Plan. *See* Ex. 1 at 11, 318. Such aspirational objectives are not enforceable obligations under section 706(2), much less under section 706(1). *Cf. In re Big Thorne Project*, 857 F.3d 968, 974 (9th Cir. 2017) (finding aspirational forest plan provisions unenforceable). The old-growth objectives merely describe steps to transition timber management from old-growth to young-growth. They do not reflect a clear indication by the Forest Service of a binding commitment to offer a particular quantity of old-growth. *See Morrison*, 67 F.3d at 728 (holding Tongass Forest Plan is a "permissive plan, meaning it would allow harvest up to the maximum output goals but would not 'mandate' outputs at those levels" (citation omitted)).

14

Therefore, in addition to failing to seek to compel a discrete agency action, Plaintiffs' claims fail because they have identified no action that the Forest Service is legally required to take.

## B.    Plaintiffs' Challenge to the Southeast Alaska Sustainability Strategy under Section 706(2) of the APA Fails.

In addition to erroneously claiming that the Forest Service failed to provide a specific quantity of old-growth timber required by law, Plaintiffs also challenge the "Southeast Alaska Sustainability Strategy" under section 706(2) of the APA. *See* Compl. ¶ 39 (Count 1: claiming strategy "is functionally a rule that required notice and comment rulemaking.").[9] In doing so, Plaintiffs allege that the Strategy has resulted in the Forest Service failing to offer more old-growth timber for sale in violation of TTRA or the Forest Plan. But this is just another way of arguing that the Forest Service failed to properly implement the timber program on the Tongass National Forest by not offering more old-growth timber for sale. This argument fails for the same reasons discussed above.

Regardless of whether Plaintiffs' allegation is characterized as a failure to offer a specific quantity of old-growth timber under section 706(1) or a decision not to offer a specific quantity of old-growth timber under section 706(2), it fails for the same reason: it seeks wholesale changes to the timber program on the Tongass National Forest and is

---

[9] Plaintiffs also purport to bring Counts 2 and 3 under section 706(2), but the allegations supporting those claims do not mention the Southeast Alaska Sustainability Strategy or any other alleged discrete agency action other than a purported failure to act. *See* Compl. ¶¶ 41-58.

thus not a challenge to discrete agency action (or inaction) under the APA. *See* 5 U.S.C. §§ 551(13), 701 (defining "agency action"), 702 (limiting review to "agency action"). As *Norton* made clear, framing inaction as action, or vice versa, does not cure this deficiency:

> The plaintiffs in *National Wildlife Federation* would have fared no better if they had characterized the agency's alleged "failure to revise land use plans in proper fashion" and "failure to consider multiple use," *ibid.*, in terms of "agency action unlawfully withheld" under § 706(1), rather than agency action "not in accordance with law" under § 706(2).

542 U.S. at 65 (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990); 5 U.S.C. §§ 706(1), (2)). Stated differently, the requirement that a plaintiff must challenge a discrete agency action "precludes 'broad programmatic attack[s]' whether couched as a challenge to an agency's action or 'failure to act.'" *Whitewater Draw Nat. Res. Conserv. Dist. v. Mayorkas*, 5 F.4th 997, 1010-11 (9th Cir. 2021) (quoting *Norton*, 542 U.S. at 64-65).

Further, Plaintiffs' claims that the Southeast Alaska Sustainability Strategy "alter[ed] the substantive requirements of the [Forest Plan]," or "amend[ed] the substantive requirements of that plan through guidance," are wrong. *See* Compl. ¶¶ 39 (Count 1), 42 (Count 2). The Forest Plan includes various objectives related to timber that would transition management from primarily old growth to primarily new growth. The Strategy amended none of those objectives, or any other Forest Plan direction. And Plaintiffs point to no Forest Plan desired conditions, goals, objectives, standards, or guidelines that the Strategy amended. The Strategy was simply not agency action, and any claim challenging it under section 706(2) fails.

16

## V.    CONCLUSION

For the reasons stated above, Plaintiffs' claims fail as a matter of law and the

Court should dismiss their Complaint and enter judgment with prejudice.


Respectfully submitted on this 20th day of May, 2025.


ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division


*/s/ Shaun M. Pettigrew*
SHAUN M. PETTIGREW (CA Bar No. 254564)
Senior Trial Attorney
Natural Resources Section
c/o NOAA Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
(202) 532-5973
shaun.pettigrew@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

Under Local Rule 7.4(a)(3), I hereby certify that the foregoing brief contains 4,709 words, excluding caption, certification of compliance, table of contents and authorities, and certificate of service.

*/s/Shaun M. Pettigrew*
Shaun M. Pettigrew
*Counsel for Defendants*