ADAM R.F. GUSTAFSON
United States Department of Justice
Acting Assistant Attorney General
Environment & Natural Resources Division

SHAUN M. PETTIGREW (CA Bar No. 254564)
Senior Trial Attorney
Natural Resources Section
c/o NOAA, Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
(202) 532-5973
shaun.pettigrew@usdoj.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA FOREST ASSOCIATION, et al., | Case No. 3:25-cv-00046-SLG |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF AGRICULTURE, et al., | |
| Defendants, | |
| ORGANIZED VILLAGE OF KASAAN, et al., | |
| Intervenor-Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. Plaintiffs fail to identify a discrete agency action enforceable under the APA ........................................................................................................ 2

    B. Plaintiffs have not identified a non-discretionary duty imposed by the TTRA or Forest Plan enforceable under Section 706(1) of the APA ........... 6

    C. Plaintiffs' ultra vires claim fails ................................................................ 12

III. CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado v. Executive Office for Immigration Review*,
  138 F.4th 1102 (9th Cir. 2025) ................................................................................. 3

*Alaska Wilderness Rec. & Tourism Ass'n v. Morrison*,
  60 F.3d 647 (9th Cir. 1995) ..................................................................................... 10

*Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*,
  67 F.3d 723 (9th Cir. 1995) ................................................................................... 4, 9

*Am. Forest Resource Council (AFRC) v. United States*,
  77 F.4th 787 (D.C. Cir. 2023) ............................................................................ 2, 4, 5

*Clinton v. City of New York*,
  524 U.S. 417 (1998) .................................................................................................. 13

*Hoonah Indian Ass'n v. Morrison*,
  170 F.3d 1223 (9th Cir. 1999) ................................................................................... 9

*Nat. Res. Def. Council v. U.S. Forest Serv.*,
  421 F.3d 797 (9th Cir. 2005) ..................................................................................... 9

*Norton v. Southern Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ............................................................................................. passim

*Perkins v. Bergland*,
  608 F.2d 803 (9th Cir. 1979) ..................................................................................... 8

*Se. Conf. v. Vilsack*,
  684 F. Supp. 2d 135 (D.D.C. 2010) .......................................................................... 4

*Sierra Club v. Hardin*,
  325 F. Supp. 99 (D. Alaska 1971) ............................................................................ 8

*Staacke v. U.S. Dep't of Lab.*,
  841 F.2d 278 (9th Cir. 1988) ................................................................................... 13

*Stout v. U.S. Forest Serv.*,
  869 F. Supp. 2d 1271 (D. Or. 2012) ........................................................................ 11

*West Virginia v. EPA*,
  597 U.S. 697 (2022) .................................................................................................. 13

**Statutes**

16 U.S.C. § 1604(a) ........................................................................................................ 14

16 U.S.C. § 528 ............................................................................................................. 14

16 U.S.C. § 539d(a) ................................................................................................ passim

5 U.S.C. § 551(13) ........................................................................................................ 2

5 U.S.C. § 706(1) .................................................................................................... 2, 10

**Regulations**

36 C.F.R. § 219.2(b)(2) ............................................................................................... 10

36 C.F.R. § 219.7(f)(iv) ............................................................................................... 10

## I. INTRODUCTION

Defendants moved to dismiss this action because Plaintiffs do not seek to compel a discrete agency action that the Forest Service is legally required to take. Nothing in Plaintiffs' response supports a different conclusion. Instead, Plaintiffs' response makes clear that rather than seeking to compel a discrete agency action, they want the Court to compel general compliance with the Tongass Timber Reform Act's (TTRA) broad statutory mandate through changes to the timber *program* on the Tongass National Forest (Forest). Such a programmatic challenge is not discrete agency action cognizable under the Administrative Procedure Act (APA).

Further, neither the TTRA nor the Forest Plan requires the Forest Service to provide a specific quantity and quality of timber. Rather, the TTRA requires the Forest Service to *seek* to provide a quantity of timber that meets annual and planning-cycle market demand to the extent consistent with multiple use and sustained yield management of the Forest. And the Forest Plan objectives referenced by Plaintiffs generally guide agency action over the life of the plan. But these objectives do not prescribe discrete actions, nor do they require the Forest Service to provide a specific quantity and type of timber. After the Supreme Court's decision in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), it is clear these precise types of statutory and regulatory mandates are not enforceable under Section 706(1) of the APA.

For the reasons set forth in Defendants' opening brief and discussed below, Plaintiffs' claims must be dismissed for failure to state a claim on which relief can be granted.

1

## II. ARGUMENT

### A. Plaintiffs fail to identify a discrete agency action enforceable under the APA.

Plaintiffs' claims under 5 U.S.C. § 706(1) should be dismissed because they have identified no *discrete* agency action that a court can compel. *See* Defs.' Mot. to Dismiss & Mem. in Supp. (Defs.' Br.) 9-10, Dkt. No. 15. This "'discreteness' requirement is rooted in the APA's insistence upon 'agency action' as a necessary predicate to judicial review." *Am. Forest Resource Council (AFRC) v. United States*, 77 F.4th 787, 804 (D.C. Cir. 2023) (citing *Norton*, 542 U.S. at 62-63), *cert. denied*, 144 S. Ct. 1110 (2024). The APA's definition of agency action "begins with a list of five categories of decisions made or outcomes implemented by an agency—'agency rule, order, license, sanction [or] relief.'" *Norton*, 542 U.S. at 62 (quoting 5 U.S.C. § 551(13)). The final category is a "failure to act," which is "properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Id.*

Plaintiffs' response confuses the issue of whether an agency action is *discrete* with whether a statutory duty is *non-discretionary*. But these are distinct inquiries, and Plaintiffs never identify the discrete agency action they seek to compel. Instead, Plaintiffs maintain that Defendants' alleged "failure to implement their statutory (nondiscretionary) duty under the TTRA and their objective refusal to do so by disclaiming its implementation of that duty under the [Forest Plan]" is enforceable under Section 706(1). Pls.' Opp'n to Defs.' Mot. to Dismiss (Pls.' Br.) 23, Dkt. No. 31; *see also id.* at 24 ("Plaintiffs allege that

2

Defendants have failed to act . . . by not implementing its nondiscretionary duty under the TTRA."). As discussed in Section II.A below, Plaintiffs misunderstand the nature of the TTRA's requirements and the Forest Plan's direction. But the Court need not reach that issue because *Norton* forecloses Plaintiffs' argument that they can compel general compliance with a statutory mandate under Section 706(1).

In rejecting the plaintiffs' argument that a court could "enter a general order compelling compliance with [a statutory] mandate, without suggesting any particular manner of compliance," *Norton* explained that "[g]eneral deficiencies in compliance" with a statutory mandate "lack the specificity requisite for agency action." 542 U.S. at 66. In other words, a court cannot compel an agency to generally comply with a statutory mandate untethered from compelling a discrete agency action (i.e., one of the APA's five categories of agency action or their equivalent). Yet that is precisely what Plaintiffs attempt to do here by asserting the Forest Service was generally deficient in complying with the TTRA and Forest Plan. Just as in *Norton*, that allegation lacks the specificity requisite for agency action that can be compelled under the APA.[1]

---

[1] For this reason, Plaintiffs' reliance on *Al Otro Lado v. Executive Office for Immigration Review*, for the proposition that a failure to exercise a mandatory statutory duty is cognizable under Section 706(1) is misplaced. Pls.' Br. 14-15 (citing 138 F.4th 1102, 1120 (9th Cir.), *petition for cert. docketed*, No. 25-5 (U.S. July 1, 2025)). Finding that the federal government had a mandatory duty to inspect noncitizens stopped at the border, the court evaluated whether the agency failed to perform a discrete action for a class of plaintiffs: processing noncitizens at the border (i.e., adjudicating their applications). *Al Otro Lado*, 138 F.4th at 1110, 1120-23; *see* 5 U.S.C. § 551(7) (defining "adjudication" as "agency process for the formulation of an order"); *id.* § 551(6) (defining "order"); *see also id.* § 701(b)(2). But there is no similar discrete agency action here. Plaintiffs ask the Court to

3

Case 3:25-cv-00046-SLG     Document 38     Filed 08/05/25     Page 7 of 20

And this lack of specificity is understandable because the Forest Service implements the TTRA and Forest Plan not through any discrete agency action but through a program of site-specific timber sales prepared and offered over the course of years. *See Se. Conf. v. Vilsack*, 684 F. Supp. 2d 135, 147 (D.D.C. 2010) (explaining Tongass National Forest's timber program includes "a mix of timber available for sale, timber sold but not yet harvested, and timber that is being planned for sale."); *see also Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 726 (9th Cir. 1995) (noting Forest Service "articulates general goals through a Forest Plan," and then implements the plan through site-specific projects). Although Plaintiffs claim to not challenge the Tongass National Forest's entire program of timber harvest activities, Pls.' Br. 23,[2] they do not and cannot dispute that the Forest Service implements the TTRA and Forest Plan through a program of site-specific timber sales rather than through any single discrete agency action.

Plaintiffs instead seek to have this Court compel changes to that program, but *Norton* forecloses such a programmatic challenge. 542 U.S. at 64. That is the lesson of *AFRC*, which held that a challenge to an agency's timber program was not reviewable because that program was not discrete agency action. 77 F.4th at 804-05. As the court explained, "the total timber volume sold comprises timber sales that can take years to

---

compel the Forest Service to "seek to provide" annual amounts of timber as outlined in the Forest Plan without any indication of a discrete action the Forest Service must take.

[2] Plaintiffs seem to acknowledge that they challenge the Forest's program of timber sales by claiming (wrongly) that the Forest Service has "disclaim[ed] any duty to pursue *sales* that would seek to meet market demand under the [Forest Plan]." Pls.' Br. 22 (emphasis added).

4

finalize. The total timber volume the [agency] offers for sale in a given year is thus not a discrete agency action. Instead, it is a measurement—a synthesis of multiple sales made over several years." *Id.* at 805 *see also id.* (explaining that plaintiffs' relief was "targeted at the continuing … operations of the [Bureau of Land Management]—years' worth of policy choices and site-specific decisions—rather than some particular agency action" (citation and quotation marks omitted)). The same is true here.

Plaintiffs attempt to distinguish *AFRC* by asserting they do not claim "that Defendants have failed to act by not offering specific volumes of timber within a specific time." Pls.' Br. 24. But that is precisely what Plaintiffs claim when they seek to compel compliance with the TTRA and Forest Plan. *See* Compl., Prayer for Relief ¶ 3, Dkt. No. 1 (requesting "mandatory injunction compelling the Defendants" to generally comply with the TTRA and Forest Plan). In doing so, Plaintiffs seek to compel the Forest Service to provide the total timber volume in an amount that would "meet[] the *annual* market demand for timber" from the Forest, 16 U.S.C. § 539d(a) (emphasis added), or that would provide for an *annual* average of timber volume under the Forest Plan, Dkt. No. 15-1 at 270-71 (Forest Plan objectives). Such relief is indistinguishable from the relief sought in *AFRC*, in which the plaintiffs sought to compel compliance with a statutory mandate requiring the "*annual* sustained yield capacity" to "be sold *annually*, or so much thereof as can be sold at reasonable prices on a normal market." *AFRC*, 77 F.4th at 804.

APA review is not available to challenge the entirety of the Forest's timber program rather than a discrete agency action, regardless of whether statutory duties are carried out through that program. Because Plaintiffs have not identified—indeed, *cannot* identify—a

5

discrete agency action that they seek to compel, their claims under Section 706(1) of the APA fail.

### B. Plaintiffs have not identified a non-discretionary duty imposed by the TTRA or Forest Plan enforceable under Section 706(1) of the APA.

The Court need not reach this issue, but Plaintiffs' claims under Section 706(1) of the APA also fail because neither the TTRA nor the Forest Plan imposes a mandatory legal requirement to provide a specific amount or type of timber for sale from the Forest. *See* Defs.' Br. 10-15. In arguing otherwise, Plaintiffs consistently conflate and confuse a mandatory duty with a non-discretionary duty. *See, e.g.*, Pls.' Br. 3 (claiming "Defendants have failed to act on their mandatory duty" under TTRA and that the Forest Plan created "mandatory constraints"), *id.* at 15 (TTRA "places a mandatory statutory duty on the Defendants"), *id.* at 16 ("mandatory nature of the duty"), *id.* at 17 ("TTRA places an affirmative mandatory duty on the Defendants"), *id.* at 21 ("Defendants have a mandatory duty under the TTRA"), *id.* at 22 ("mandatory duty under the TTRA").

But as *Norton* explained, even where a legal requirement "is mandatory as to the object to be achieved," agency action cannot be compelled under Section 706(1) if, given an agency's discretion to decide how to satisfy a statutory requirement, a court could do no more than generally declare that the agency must meet that requirement. *Norton*, 542 U.S. at 66. And that is because Section 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." *Id.* at 64 (internal quotation marks and citation omitted). Thus, although the statute at issue in *Norton* was mandatory as to the object to be achieved

6

(management of wilderness study areas "in a manner so as not to impair the suitability of such areas for preservation as wilderness"), this duty was not enforceable under Section 706(1) because it left the agency "a great deal of discretion" to decide how to manage wilderness study areas to preserve their wilderness character. *Id.* at 65-66.

*Norton*'s analysis applies with extra force here. The TTRA requires the Forest Service, "to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources," to "seek to provide a supply of timber from the Tongass National Forest which (1) meets the annual market demand for timber from such forest and (2) meets the market demand from such forest for each planning cycle." 16 U.S.C. § 539d(a). This duty, while mandatory, is not enforceable under Section 706(1) because the agency has a great deal of discretion to determine whether seeking to meet market demand is consistent with providing for the multiple use and sustained yield of all renewable forest resources and what actions sufficiently seek to meet market demand. Plaintiffs seem to acknowledge as much. *See* Pls.' Br. 17 (acknowledging "Defendants have flexibility" in implementing TTRA). Such a discretionary requirement is unenforceable under Section 706(1).

The TTRA expressly conditions the Forest Service's mandate to seek to meet market demand on being "consistent with providing for the multiple use and sustained yield of all renewable forest resources." 16 U.S.C. § 539d(a). Such management is an "enormously complicated task" that requires the Forest Service to strike "a balance among the many competing uses to which land can be put" and "to ensure a high level of valuable uses in the future." *Norton*, 542 U.S. at 58-59. This type of management "breathe[s]

7

discretion at every pore." *Perkins v. Bergland*, 608 F.2d 803, 806-07 (9th Cir. 1979); *see also Sierra Club v. Hardin*, 325 F. Supp. 99, 123 & n.48 (D. Alaska 1971) (multiple use and sustained yield management "is left to the sound discretion and expertise of the Forest Service").

This broad discretion is compounded by the TTRA's direction that the Forest Service also "seek to provide a supply of timber" from the Forest that meets the annual and planning cycle "market demand." 16 U.S.C. § 539d(a). The TTRA does not define market demand, and so it grants the Forest Service discretion to determine annual and planning cycle market demand. Plaintiffs do not seem to dispute this. But Plaintiffs allege that the Forest Plan identified the amount of timber that would meet market demand and that it had a non-discretionary duty to make timber available in that amount. *See* Pls.' Br. 2 (claiming Forest Plan "outlined specific timber volumes that would seek to satisfy market demand"), *id.* at 10-11 (asserting Forest Plan "outlined a timber market demand of 46 MMBF annually" that "the Secretary considered necessary to be an appropriate volume of timber that 'seeks to meet market demand, consistent with TTRA"), *id.* at 21-22 ("Plaintiffs allege that by refusing to enforce its own management plan—which outlines the market demand for the supply of timber from the Tongass, including old-growth timber as required by the TTRA—the Defendants have violated APA § 706(1)."), *id.* at 26 ("the timber volumes outlined in the [Forest Plan] and ROD are the implementation of the Defendants' duty under the TTRA.").

But this argument misunderstands the TTRA and Forest Plan. To begin, even once the Forest Service estimates the projected market demand for planning purposes, the TTRA

8

does not establish a non-discretionary duty requiring the Forest Service to provide timber from the Forest in that amount. Instead, the Forest Service must "*seek* to provide" that supply of timber. 16 U.S.C. § 539d(a); *see also Nat. Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 809 (9th Cir. 2005) (TTRA "requires the Forest Service to at least *consider* market demand and *seek* to meet market demand."). The discretion in this language is self-evident, and courts have consistently and uniformly held as much. *See* Defs.' Br. 12 (gathering cases). The TTRA did not create a non-discretionary duty for the Forest Service to provide "an inflexible harvest level." *Morrison*, 67 F.3d at 731.[3] Instead, the TTRA's mandate that the Forest Service "seek to provide" timber from the Forest to meet market demand to the extent consistent with multiple use and sustained yield management of the Forest involves the kind of discretionary decisions and actions that *Norton* makes clear are not enforceable under Section 706(1). *See Alaska Forest Ass'n v. United States*, J94-cv-007, slip op. at 1-2 (D. Alaska Oct. 19, 1995) (explaining Ninth Circuit precedent "made it clear that the Forest Service has no such duty [to meet market demand for forest products]"

---

[3] Plaintiffs cite *Hoonah Indian Ass'n v. Morrison*, 170 F.3d 1223, 1225 (9th Cir. 1999), for the proposition that "the Ninth Circuit found that the [TTRA's] text 'commands the Secretary of Agriculture to sell enough wood from the Tongass National Forest . . . to satisfy market demand.'" Pls.' Br. 17. But Plaintiffs omit the phrase "subject to certain qualifications." *Hoonah Indian Ass'n*, 170 F.3d at 1225. And those qualifications include being "consistent with providing for the multiple use and sustained yield of all renewable forest resources." 16 U.S.C. § 539d(a). Further, the quoted language was followed immediately by the full text of the statute, which makes clear that the TTRA's duty is to "seek to provide a supply of timber" to meet market demand. *Hoonah Indian Ass'n*, 170 F.3d at 1225 (quoting 16 U.S.C. § 539d(a)).

9

cognizable under section 706(1) (citing *Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 60 F.3d 647 (9th Cir. 1995)), ECF No. 15-5.

Similarly, the Forest Plan objectives that Plaintiffs attempt to rely on are by their terms not duties at all. Rather, they are the kind of "will do" provisions that *Norton* also makes clear are not enforceable under Section 706(1). *See Norton*, 542 U.S. 55, 71 ("Quite unlike a specific statutory command . . . a land use plan is generally a statement of priorities; it guides and constrains actions, but does not (at least in the usual case) prescribe them."); *see also* 36 C.F.R. § 219.2(b)(2) (noting forest plans do "not authorize projects or activities or commit the Forest Service to take action."), *id.* § 219.7(f)(iv) (explaining forest plans "[c]ontain information reflecting proposed and possible actions that may occur on the plan area during the life of the plan, including: the planned timber sale program [and] timber harvesting levels," but that "[s]uch information is not a commitment to take any action . . .").

Although nowhere mentioned in their Complaint, Plaintiffs now argue that "four timber harvest objectives" in the Forest Plan are enforceable under Section 706(1). Pls.' Br. 24. But Plaintiffs ignore that Forest Plan objectives are aspirational steps to be taken and resources to be used in achieving Forest Plan goals and desired conditions during the entire life of the Forest Plan. *See* Defs.' Br. 14; *see also id.* at 4-5 (explaining difference between Forest Plan desired conditions, goals, objectives, standards, and guidelines). Unlike standards and guidelines, objectives are not mandatory. *See id.* Instead, they are "'will do' projections of agency action set forth in [a] land use plan[]," which are not "legally binding commitment[s] enforceable under § 706(1)." *Norton*, 542 U.S. at 72; *see*

10

Case 3:25-cv-00046-SLG     Document 38     Filed 08/05/25     Page 14 of 20

*also Stout v. U.S. Forest Serv.*, 869 F. Supp. 2d 1271, 1280 (D. Or. 2012) (finding forest plan direction unenforceable under Section 706(1) because it "leaves a measure of discretion to the Forest Service in determining how to manage livestock, whether resource conditions meet management goals and standards, and in determining whether there is a conflict between livestock, big game, and wild horses." (quotations omitted)).

Plaintiffs assert that a contrary conclusion providing for judicial oversight of implementation of these objectives would not risk "undue judicial interference" with the Forest Service's lawful discretion. Pls.' Br. 26. But even cursory consideration of the judicial entanglement Plaintiffs' requested relief would require dispels this assertion. Among other relief, Plaintiffs seek a "mandatory injunction compelling the Defendants to abide by the TTRA and [Forest Plan] and to offer a sale of old-growth timber in compliance with its duty in accordance with the APA." Compl., Prayer for Relief ¶ 3. Judicial enforcement of any such mandatory injunction would, at minimum, require the Court to itself reassess the annual and planning cycle market demand for timber projected by the Forest Service to determine whether seeking to meet that demand is consistent with managing the Forest for multiple uses and sustained yield, and decide whether particular steps by the agency sufficiently "seek" to provide a supply of timber from the Forest to meet that demand. These inquiries require the exercise of technical expertise and discretion within the Forest Service's domain. *Norton* forecloses precisely the sort of judicial entanglement with the discretionary decisions and actions of the Forest Service that Plaintiffs request.

11

Case 3:25-cv-00046-SLG    Document 38    Filed 08/05/25    Page 15 of 20

Anticipating the unenforceability of Forest Plan objectives under Section 706(1), Plaintiffs also argue the Forest Service "still acted arbitrarily and capriciously [under Section 706(2)] by abandoning the [Forest Plan] objectives through the Southeast [Alaska] Sustainability Strategy." Pls.' Br. 27. As explained in Defendants' opening brief, however, this is just another way of arguing that the Forest Service failed to properly implement the timber program on the Forest, which is not a challenge to agency action under the APA. *See* Defs.' Br. 15-16. And to the extent that Plaintiffs suggest the Southeast Alaska Sustainability Strategy unlawfully amended the Forest Plan, they are wrong. *See* Pls.' Br. 19-20, 25. The strategy was merely the public announcement of an internal reallocation of "management resources" to end "large-scale old growth timber sales on the Tongass National Forest," while continuing to offer "[s]mall and micro old growth sales." *See* Defs.' Br. 6 (quoting press release announcing strategy). This internal reallocation of resources did not amend or otherwise alter any provision of the Forest Plan, and Plaintiffs have not stated a claim under Section 706(2) of the APA.

### C. Plaintiffs' ultra vires claim fails.

Finally, Plaintiffs assert that the Forest Service has acted ultra vires under the Southeast Alaska Sustainability Strategy by "foreclosing old-growth sales in the Tongass" that the TTRA requires. Pls.' Br. 29-30. This claim is factually wrong, as the press release announcing the Southeast Alaska Sustainability Strategy explained that, only large-scale old growth timber sales were ended while smaller sales continued. *See* Defs.' Br. 6 (quoting press release). But more to the point, the TTRA does not contain a clear statutory command requiring the Forest Service to provide old-growth timber sales from the Forest. Indeed,

12

the TTRA nowhere mentions old growth. Instead, it provides that "the Secretary shall, to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources, seek to provide a supply of timber from the Tongass National Forest" to meet annual and planning cycle "market demand." 16 U.S.C. § 539d(a).

As this statutory language makes clear, Plaintiffs have not shown and cannot show that the TTRA contains a clear command to provide a supply of old-growth timber that the Forest Service has transgressed. Absent such a command, Plaintiffs have failed to show that the Forest Service acted ultra vires. *See Staacke v. U.S. Dep't of Lab.*, 841 F.2d 278, 282 (9th Cir. 1988) (Ultra vires review "is limited to determining whether the statute in question contains a clear command that the [agency] has transgressed.").

Seeking to sidestep the TTRA's text, Plaintiffs lean on the major questions doctrine, arguing that the Forest Service could eliminate large-scale old growth timber sales on the Forest only if Congress clearly gave the agency that authority. Pls.' Br. 29-30 (citing *Clinton v. City of New York*, 524 U.S. 417, 536-47 (1998), *West Virginia v. EPA*, 597 U.S. 697, 723 (2022)). But the major questions doctrine applies only in "extraordinary cases" when "the history and the breadth of the authority that [the agency] has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority." *West Virginia*, 597 U.S. at 721 (internal quotation marks and citation omitted). Management of timber on federal lands on a single national forest in Alaska does not meet that standard.

But even if the doctrine applied, the relevant inquiry is not whether Congress clearly authorized the Forest Service to cease large-scale old growth timber harvest on the Forest

13

but whether Congress clearly authorized the Forest Service to manage the timber resources on the Forest. And on that question, Congress clearly authorized the Forest Service to manage National Forest System lands for multiple uses, including timber. *See* 16 U.S.C. §§ 528 (Multiple-Use Sustained-Yield Act (MUSYA) providing for national forests to be "administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes), *id.* § 1604(a) (NFMA requiring management under MUSYA). Further, the TTRA expressly calls for the Forest Service to manage the Forest's timber resource. *Id.* § 539d(a). Neither statute prescribes or proscribes the specific amount of timber (old growth or otherwise) that the Forest Service must provide. That is left to the sound discretion of the expert agency. Because Congress clearly gave the Forest Service discretionary authority to manage timber on the Forest without directing a specific quantity of timber (old growth or otherwise) to be provided, Plaintiffs' claim that the Forest Service acted ultra vires fails as a matter of law.

### III.   CONCLUSION

For the reasons stated in Defendants' opening brief and above, Plaintiffs' claims fail as a matter of law and the Court should dismiss their Complaint and enter judgment with prejudice.

Respectfully submitted on this 5th day of August, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division

14

Case 3:25-cv-00046-SLG   Document 38   Filed 08/05/25   Page 18 of 20

/s/ Shaun M. Pettigrew
SHAUN M. PETTIGREW (CA Bar No. 254564)
Senior Trial Attorney
Natural Resources Section
c/o NOAA Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
(202) 532-5973
shaun.pettigrew@usdoj.gov

*Counsel for Defendants*

# **CERTIFICATE OF COMPLIANCE**

      Under Local Rule 7.4(a)(3), I hereby certify that the foregoing brief contains 4,066 words, excluding caption, certification of compliance, table of contents and authorities, and certificate of service.

                                          */s/Shaun M. Pettigrew*
                                          Shaun M. Pettigrew
                                          *Counsel for Defendants*