# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

ALASKA FOREST ASSOCIATION, *et al.*,

      Plaintiffs,

      v.

U.S. DEPARTMENT OF AGRICULTURE, *et al.*,

      Defendants,

      and

ORGANIZED VILLAGE OF KASAAN, *et al.*,

      Intervenor-Defendants.

Case No. 3:25-cv-00046-SLG

## ORDER ON MOTION TO DISMISS

Before the Court at Docket 15 is a Motion to Dismiss filed by Defendants U.S. Department of Agriculture ("USDA"), Secretary of Agriculture Brooke Rollins, U.S. Forest Service, and U.S. Forest Service Chief Tom Schultz. Plaintiffs Alaska Forest Association, Viking Lumber Company, Inc., and Alcan Timber Incorporated responded in opposition at Docket 31, to which Defendants replied at Docket 38. Two Alaskan villages, environmental organizations, a tourism company, and a fishing association joined in this matter as Intervenor-Defendants.[1] Oral argument

---

[1] Docket 39. The Court granted permissive intervention to the Organized Village of Kasaan, Organized Village of Kake, The Boat Company, Alaska Longline Fishermen's Association, Center for Biological Diversity, Natural Resources Defense Council, Southeast Alaska Conservation Council, and The Wilderness Society.

was not requested and was not necessary to the Court's determination. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

**BACKGROUND**

## I.    The Tongass National Forest

The Tongass National Forest (the "Tongass") in southeast Alaska is the nation's largest national forest.[2]  The Tongass is also the largest temperate old-growth rainforest in the world; it represents "nearly a third of all old-growth temperate rainforests left in the world"; "holds more biomass per acre than any other rainforest in the world"; and "stores more carbon than any other national forest in the United States."[3]

For many years, the Tongass has supported the southeast Alaska lumber industry.[4]  Generally speaking, there are two primary categories of timber harvested in the Tongass: old-growth timber and young-growth timber.[5]  Because old-growth timber is significantly larger than young-growth timber (also known as "second-growth" timber), old-growth timber is more lucrative, versatile, and profitable to harvest.[6]  The Alaskan timber industry was historically a significant

---

[2] Docket 15-1 at 367; *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 776 F.Supp.2d 960, 961 (D. Alaska 2011).

[3] Docket 15-3 at 1, 3.

[4] *See* Docket 1-1 at ¶¶ 4-8 (Decl. of Kirk Dahlstrom); Docket 1-2 at ¶¶ 3-6 (Decl. of Brian Brown); Docket 1-3 at ¶¶ 4-8 (Decl. of Bryce Dahlstrom).

[5] Docket 1 at 9, ¶¶ 21-22.

[6] *See* Docket 1-1 at ¶ 5; Docket 1-2 at ¶¶ 10-12; Docket 1-3 at ¶¶ 12, 14.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 2 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 2 of 35

provider of jobs, but Plaintiffs allege it is now "on the brink of collapse," having gone from approximately 3,500 jobs down to approximately 300 over the span of three decades.[7]

Plaintiffs are Viking Lumber Company, Inc. ("Viking"), a logging company, Alcan Timber Incorporated ("Alcan"), a timber sale operator, and the Alaska Forest Association, a timber industry trade association.[8] Viking is headquartered near Craig, Alaska and seeks greater access to old-growth timber from the Tongass.[9] The company is central to Craig's economy, employing 48 full-time employees.[10] Together, Viking and Alcan support approximately 250 direct jobs in Alaska.[11] Further, beyond the economic significance of logging companies and sawmills, the lumber industry also contributes to employment in the trucking industry, and tug and barge operations.[12]

According to a corporate official at Viking, access to old-growth timber is essential to the company and the industry's survival. He explains: "Absent new sales of old-growth timber, our mill is likely to shut down by August 2025. Future

---

[7] Docket 1 at 3-4, ¶ 6; Docket 1 at 8, ¶ 19 (citing *Southeast Alaska By The Numbers 2022,* Rain Coast Data (Sept. 2022)).

[8] Docket 1 at 4-5, ¶¶ 7, 9-11.

[9] Docket 1-1 at ¶¶ 4, 9, 12-14.

[10] Docket 1-1 at ¶ 8.

[11] Docket 1 at 5, ¶¶ 10-11.

[12] Docket 1 at 4, ¶ 7; Docket 1-1 at ¶ 8.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 3 of 35

old-growth timber sales are thus crucial to Viking's continued operations and long-term viability."[13]

## II. Congressional Directives Regarding the Tongass

### A. The Multiple-Use Sustained-Yield Act and the National Forest Management Act

The Forest Service manages all National Forest System ("NFS") lands under the Multiple-Use Sustained-Yield Act ("MUSYA"), which requires "the national forests" to be "administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes."[14] The National Forest Management Act ("NFMA") "establishes a two-step process for forest planning" on national forest lands.[15] First, the NFMA requires the Forest Service to develop and maintain "land and resource management plans," also known as a "Forest Plan," for each unit of the NFS.[16] Each Forest Plan must "provide for multiple use and sustained yield of the products and services obtained" from NFS lands "in accordance with the [MUSYA]."[17] Then, "the Forest Service implements each Forest Plan by approving or disapproving site-specific actions" where "[a]ll proposed projects must be

---

[13] Docket 1-1 at ¶¶ 3, 6, 14.

[14] 16 U.S.C. § 528.

[15] 16 U.S.C. § 1604; *Native Ecosystems Council v. U.S. Forest Serv.,* 418 F.3d 953, 957 n.1 (9th Cir. 2005).

[16] *Native Ecosystems Council*, 418 F.3d 957 n.1 (citing 16 U.S.C. § 1604(a)); 16 U.S.C. § 1604(a).

[17] 16 U.S.C. § 1604(e)(1). The multiple uses that the Forest Service must balance include outdoor recreation range, timber, watershed, wildlife and fish, and wilderness uses. *See id.*

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 4 of 35

consistent with the overall forest plan."[18]

### B. The Alaska National Interest Lands Conservation Act and the Tongass Timber Reform Act

In 1980, Congress enacted the Alaska National Interest Lands Conservation Act ("ANILCA").[19]  In 1990, Congress enacted the Tongass Timber Reform Act ("TTRA"), which amended portions of ANILCA.[20]  The TTRA "speaks not to all national forests but only to one, the Tongass National Forest in Southeast Alaska."[21]  Under the TTRA, timber sales from the Tongass are governed by 16 U.S.C. § 539d(a), which provides in relevant part:

> Subject to appropriations, other applicable law, and the requirements of the [NFMA] . . . the Secretary shall, to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources, seek to provide a supply of timber from the Tongass National Forest which (1) meets the annual market demand for timber from such forest and (2) meets the market demand from such forest for each planning cycle.[22]

The Ninth Circuit has held that the TTRA "requires the Forest Service to at least

---

[18] *Native Ecosystems Council*, 418 F.3d at 957 n.1 (citing 16 U.S.C. § 1604(i)).

[19] Pub. L. No. 96-487, 94 Stat. 2371 (1980) (codified at 16 U.S.C. § 3101 *et seq.*). Congress enacted ANILCA to help preserve Alaska's natural resources while simultaneously providing continued opportunity for rural residents to engage in a subsistence way of life. *See Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1091 (9th Cir. 2008); *see also* 16 U.S.C. § 3101.

[20] Pub L. No. 101–626, 104 Stat. 4426 (1990).

[21] *Hoonah Indian Ass'n v. Morrison*, 170 F.3d 1223, 1225 (9th Cir. 1999) [hereinafter *Hoonah*].

[22] 16 U.S.C. § 539d(a) ("Tongass National Forest timber supply; satisfaction of certain market demands").

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 5 of 35

*consider* market demand and *seek* to meet market demand."[23]

### III. Forest Plans

In 2013, then-Secretary of Agriculture Tom Vilsack issued Memorandum 1044-009 ("Vilsack Memo").[24] The memorandum "direct[ed] management of the Tongass National Forest to expedite the transition away from old-growth timber harvesting and towards a forest products industry that uses predominantly second-growth – or young-growth – forests."[25] It also established the Tongass Advisory Committee ("TAC"), which was tasked with recommending alternative ways to accelerate the transition to young-growth timber.[26]

On July 1, 2016, the Forest Service released the Final Environmental Impact Statement ("FEIS") for an amended Forest Plan for the Tongass.[27] The FEIS "describes and analyzes five alternatives in detail, including a Proposed Action and No Action Alternative, and discusses how the issues identified during the scoping process helped shape the action alternatives."[28] The five alternatives analyzed in detail were "designed to provide a reasonable range of ways to meet the Purpose

---

[23] *Nat. Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 809 (9th Cir. 2005) (emphasis in original) [hereinafter *NRDC*].

[24] Docket 1 at 9, ¶ 22.

[25] Docket 15-2 at 12.

[26] Docket 15-2 at 12.

[27] A Draft Record of Decision ("ROD") and Amended Forest Plan were also released on July 1, 2016. Docket 15-2 at 8.

[28] Docket 15-1 at 9.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 6 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 6 of 35

and Need [of the action as set forth in the FEIS]."[29]   The Purpose and Need Statement in the FEIS focused on "accelerating the transition to young-growth management while maintaining the timber industry and encouraging the production of renewable energy resources."[30]

In December 2016, the final Record of Decision ("ROD") was issued. The ROD evaluated the five alternatives in the FEIS.[31]  The ROD selected Alternative 5, which was the recommendation of the TAC with some modifications.[32]  The ROD states in relevant part:

> Under Alternative 5 the Agency estimates that an average of 46 MMBF ("Million Board Feet") of timber will be offered per year (equivalent to the rate needed to meet the projected timber demand for the planning cycle). The alternative emphasizes sales of young-growth timber and minimizes sales of old growth while maintaining 46 MMBF per year, to reach the estimated quantity of timber expected to be sold during the first decade, 460 MMBF. As such, under Alternative 5 the Agency expects to sell an average of about 12 MMBF of young growth and 34 MMBF of old growth per year during the first 10 years. From Year 11 through Year 15, it expects to sell an average of 28 MMBF of young growth and about 18 MMBF of old growth per year. Alternative 5 is expected to reach a full transition of 41 MMBF of young growth about Year 16. Young-growth sales are expected to continue to increase at a rapid rate after Year 16 and are expected to reach an upper limit of 98 MMBF about Year 18. Old-growth timber will continue to be offered at

[29] Docket 15-2 at 17.

[30] Docket 15-2 at 16.

[31] Docket 15-2 at 13, 16-18.

[32] Docket 15-1 at 359-412; Docket 15-2 at 13-16.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 7 of 35

Case 3:25-cv-00046-SLG   Document 44   Filed 03/12/26   Page 7 of 35

an average rate of 5 MMBF per year to support small operators and specialty products such as wood for musical instruments.[33]

The 2016 Forest Plan was also issued in December 2016 in conjunction with the ROD; this plan amended and replaced the 2008 Tongass Land and Resource Management Plan ("2008 Forest Plan").[34]

The 2016 Forest Plan contains numerous forest-wide multiple-use goals.[35] "Goals are expressed in broad, general terms and specify no date by which they are to be accomplished."[36] There are two goals for timber in the 2016 Forest Plan: (1) "Provide for the continuation of timber uses and resources by the timber industry and Alaska residents"; and (2) "Manage the timber resource for production of saw timber and other wood products from lands suitable for timber production, on an even-flow, long-term sustained yield basis and in an economically efficient manner."[37]

To help achieve these goals, the 2016 Forest Plan adopted two forest-wide timber objectives: "O-TIM-01" and "O-TIM-02" (collectively, the "timber

[33] Docket 15-2 at 14.

[34] Docket 15-1 at 8.

[35] Docket 15-1 at 18-23. Categories of goals include air, biodiversity, fish, heritage resources, karst and cave resources, local and regional economies, minerals and geology, plants, recreation and tourism, renewable energy, research, sacred sites, scenery, soil and water, subsistence, timber, transportation, wetlands, wild and scenic rivers, wilderness, and wildlife. Docket 15-1 at 19-23.

[36] Docket 15-1 at 19.

[37] Docket 15-1 at 22.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 8 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 8 of 35

objectives").[38] "Objectives are expected to be achieved during the life of the Forest Plan (15 years) to help accomplish Plan goals."[39] The 2016 Forest Plan also had two objectives specific to young-growth timber: "O-YG-01" and "O-YG-02" (collectively, the "young-growth timber objectives").[40] The timber objectives and the young-growth timber objectives work in tandem to forecast an annual timber market demand.[41] To estimate future demand, "[t]he Forest Service's Pacific Northwest Research Station prepared a new study of market demand for timber from the Tongass National Forest" using demand projections from a 2016 demand study and assumed that the market demand for southeast Alaska timber would remain stable during the life of the 2016 Forest Plan.[42]

---

[38] Docket 15-1 at 22; Docket 15-1 at 270 ("O-TIM-01: Seeking to accelerate a transition to primarily young-growth harvest, offer an average of 46 MMBF annually in a combination of old growth and young growth. When young-growth offered is less than 41 MMBF, provide old growth to make up the difference and achieve the average annual projected timber sale quantity of 46 MMBF. After the transition, offer an average of 5 MMBF of old growth annually to support Southeast Alaska mills."); Docket 15-1 at 271 ("O-TIM-02: Seek to provide an economic timber supply sufficient to meet the annual market demand for Tongass National Forest timber, and the market demand for the planning cycle. The volume of young growth as part of the yearly offer will increase from an average of 9.2 MMBF annually in the first decade to an average of 25 MMBF annually in years 11-15 as the program nears full transition.").

[39] Docket 15-1 at 19.

[40] Docket 15-1 at 259 ("O-YG-01: During the 15 years after plan approval, the amount of young-growth offered would gradually increase to exceed 50 percent of the timber offered annually."); Docket 15-1 at 260 ("O-YG-02: During the 15 years after plan approval, offer increasing annual volumes of economically viable young-growth timber. Old-growth timber harvest would gradually be reduced to an average of 5 million board feet (MMBF) annually, to support Southeast Alaska mills.").

[41] Docket 15-1 at 143, 271.

[42] Docket 15-2 at 35-36, 42 (citing Jean M. Daniels et al., *Tongass National Forest Timber Demand: Projections for 2015 to 2030* (2016)).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 9 of 35

Under the Planned Timber Sale Program in the 2016 Forest Plan, the Forest Service would first estimate the projected wood sale quantity ("PWSQ"), which is "an estimate of the volume of all timber and other wood products that is expected to be sold during the plan period from expected harvests."[43]  Then, the projected timber sale quantity ("PTSQ"), a subset of the PWSQ, would be calculated, which "is the estimated quantity of timber meeting applicable utilization standards that is expected to be sold during the plan period."[44]  The 2016 Forest Plan states that "PTSQ is not a target nor a limitation on harvest, and is not an objective unless the responsible official chooses to make it an objective in the plan."[45]  The 2016 Forest Plan concluded that "[t]he PTSQ for the Tongass National Forest is estimated to be 46.0 MMBF or 10.3 [million cubic feet ("MMCF")] per year for the first decade, increasing to 71.8 MMBF or 16.0 MMCF per year for the second decade, due to more young growth reaching harvestable age."[46]

As noted above, the December 2016 ROD also "estimate[d] that an average of 46 MMBF of timber will be offered per year," during the 15 years that the 2016 Forest Plan is in effect, which is the "equivalent to the rate needed to meet the

---

[43] Docket 15-1 at 356.

[44] Docket 15-1 at 356.

[45] *See* Docket 15-1 at 356-57.

[46] Docket 15-1 at 357 (citing Docket 15-2 at 357, Table A-2).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 10 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 10 of 35

projected timber demand for the planning cycle."[47]  The ROD characterized "the baseline annual average of 46 MMBF timber demand from the Tongass [as] a conservative and rational estimate" as the transition to young-growth timber takes place.[48]  The ROD further explained that the 2016 Forest Plan was intended to "function in a manner that transitions to primarily young-growth harvest within 10 to 15 years, maintains a viable timber industry, operates within an identified suitable land base that maintains the Forest Plan's Conservation Strategy yet produces an appropriate volume of timber, and seeks to meet market demand, consistent with TTRA."[49]

Despite the 2016 Forest Plan and the ROD's estimate that an average of 46 MMBF of timber would be offered each year from the Tongass, in 2017, the Forest Service offered only approximately 31 MMBF of timber.[50]  According to Plaintiffs, from 2018 through 2021, "Defendants offered less than 10 MMBF annually on average."[51] The 10 MMBF figure appears to be incorrect for those four years; based on the 2018 through 2021 figures cited, the Forest Service offered an average of 16.5 MMBF annually during those four years—an amount still

---

[47] Docket 15-2 at 14.

[48] Docket 15-2 at 36.

[49] Docket 15-2 at 36-37.

[50] U.S. Forest Serv., *Draft Timber Resources Assessment Tongass National Forest Plan Revision* 12 (Dec. 2024); Docket 31 at 17-18; Docket 1 at 10, ¶ 25.

[51] Docket 31 at 17-18 (citing Docket 1 at 10, at ¶ 25). U.S. Forest Serv., *Draft Timber Resources Assessment Tongass National Forest Plan Revision* 11-12, 13 (Dec. 2024)).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 11 of 35

considerable below the 46 MMBF annual projection.[52]

## IV. Southeast Alaska Sustainability Strategy

On July 15, 2021, the USDA issued a press release announcing the "Southeast Alaska Sustainability Strategy" (the "2021 Strategy"), pledging that "[a]s a key part of the [2021 Strategy], USDA will end large-scale old growth timber sales on the Tongass National Forest and will instead focus management resources to support forest restoration, recreation and resilience, including for climate, wildlife habit and watershed improvement."[53] The 2021 Strategy did not foreclose all old-growth logging: "Small and micro old growth sales will still be offered for community consumption and cultural uses such as totem poles, canoes and tribal artisan use."[54]

## V. Procedural History

On March 6, 2025, Plaintiffs brought this suit against Defendants, challenging their management of timber sales in the Tongass.[55] Count I alleges that "[t]he [2021 Strategy]—altering the substantive requirements of the 2016 [Forest] Plan—is functionally a rule that required notice and comment rulemaking"

---

[52] According to the December 2024 Draft Timber Resources Assessment, the Forest Service offered 34 MMBF in 2018, 28 MMBF in 2019, 2 MMBF in 2020, and 2 MMBF in 2021. U.S. Forest Serv., *Draft Timber Resources Assessment Tongass National Forest Plan Revision* 12-13 (Dec. 2024). These numbers correspond to an average of 16.5 MMBF per year.

[53] Docket 15-3 at 1. Plaintiffs' Complaint incorporates the press release by reference. *See* Docket 1 at 3-4, ¶ 6 & n.1.

[54] Docket 15-3 at 1.

[55] Docket 1 at 2-5, ¶¶ 4-8.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 12 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 12 of 35

and that "[t]he agencies have also failed to provide old-growth timber sales in line with the [2016 Forest Plan] based on these actions," amounting to a violation of the Administrative Procedure Act ("APA").[56]  Count II alleges that "[i]n refusing to follow the 2016 [Forest] Plan and amending the substantive requirements of that plan through guidance, the USDA and Forest Service have acted arbitrarily and capriciously," and thus violated the APA.[57]  Count III alleges that Defendants implemented an *ultra vires* policy by foreclosing old-growth timber sales in the Tongass and that "[t]he USDA and Forest Service have failed to meet [annual timber market] demand as required by the TTRA and have thus violated the statute's requirements and the APA."[58]

Plaintiffs seek the following relief: First, "[a] judgment declaring the [2021] Strategy to be (1) an unlawful and unenforceable agency action; (2) that was arbitrary and capricious; and (3) without observance of procedure required by law, and in excess of statutory jurisdiction, authority, or limitations and thus the 2016 [Forest] Plan is still binding."[59]  Second, "[a] judgement declaring that the USDA and Forest Service have acted ultra vires and failed to act in conformity to their

---

[56] Docket 1 at 13-14, ¶¶ 34-40; *see* 5 U.S.C. § 551 *et seq.*

[57] Docket 1 at 14-15, ¶¶ 41-48.

[58] Docket 1 at 16-18, ¶¶ 49-58.

[59] Docket 1 at 18, ¶ 1.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 13 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 13 of 35

duty under the TTRA to provide old-growth timber that meets market demand."[60] And third, "[a] mandatory injunction compelling the Defendants to abide by the TTRA and 2016 [Forest] Plan and to offer a sale of old-growth timber in compliance with its duty in accordance with the APA."[61]

Defendants seek dismissal of all three Counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and "request that judgment with prejudice be entered in their favor."[62]

## LEGAL STANDARD

A party may seek dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[63]

## DISCUSSION

This action arises under the APA, which provides for judicial review of final agency action.[64]

---

[60] Docket 1 at 18, ¶ 2.

[61] Docket 1 at 18-19, ¶ 3.

[62] Docket 15 at 5, 11.

[63] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[64] 5 U.S.C. §§ 701 *et seq.*

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 14 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 14 of 35

Pursuant to § 706(2)(A) of the APA, a reviewing court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[65] "Judicial review under [this] standard is deferential, and a court may not substitute its own policy judgment for that of the agency."[66] "A court simply ensures that the agency has acted within a zone of reasonableness and . . . has reasonably considered the relevant issues and reasonably explained the decision."[67]

Section 706(2)(C) of the APA requires a reviewing court to set aside agency action if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." The APA requires courts to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . . [C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."[68]

Section 706(2)(D) of the APA requires agency action to be set aside when it was done "without observance of procedure required by law."

Pursuant to § 706(1) of the APA, a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed," including a failure to act, but

---

[65] *Id.* § 706(2)(A).

[66] *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

[67] *Id.* (first citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–514 (2009); and then citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[68] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 15 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 15 of 35

"only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to *take*."[69]  A court may not compel agency action whenever an agency is withholding or delaying *any* action.[70]  Rather, a court's authority to compel agency action "is carefully circumscribed to situations where an agency has ignored a specific legislative command."[71] Section 706(1) of the APA applies when an agency has failed "to perform a ministerial or non-discretionary act," not an action over which the agency is accorded discretion.[72]

The Court considers Plaintiffs' three Counts in reverse order.

## I. Count III - Violation of the APA (*Ultra Vires* Agency Action and Failure to Act in Compliance with the TTRA (16 U.S.C. § 539(d); 5 U.S.C. § 706(1), (2)(A)))

Count III of the Complaint alleges Defendants "failed to meet [annual market] demand as required by the TTRA and have thus violated [the TTRA] and the APA."[73]  Count III also alleges that Defendants "have implemented an ultra vires policy not authorized by Congress and have never met the market demand for timber from the Tongass National Forest."[74]

---

[69] *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-64 (2004) [hereinafter *Norton*] (emphasis in original); 5 U.S.C. § 706(1).

[70] *Or. Nat. Desert Ass'n v. Bushue*, 644 F. Supp. 3d 813, 822 (D. Or. 2022).

[71] *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010).

[72] *Id.* at 64.

[73] Docket 1 at 17, ¶ 52.

[74] Docket 1 at 18, ¶ 57.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 16 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 16 of 35

Defendants maintain that dismissal of Count III is warranted because "the TTRA does not impose a non-discretionary duty on the Forest Service to offer a specific quantity of old-growth timber from the [Tongass]."[75] Rather, the TTRA "mandates that the Forest Service must plan in a way that will fulfill both its contractual commitments and its statutorily mandated environmental commitments, not one at the expense of the other."[76] Further, Defendants maintain that "even absent this multiple-use directive, the TTRA's stated timber objectives are also infused with discretion, making them unenforceable under section 706(1)."[77]

In their opposition, Plaintiffs assert that Count III should not be dismissed because (1) "[t]he TTRA creates a mandatory, non-discretionary duty for the Defendants to seek to provide a supply of timber from the Tongass National Forest that meets market demands"; (2) "Defendants have failed to act on their statutory duty under the TTRA by refusing to seek to provide the market demand for timber from the Tongass National Forest"; and (3) "Defendants' motion to dismiss misconstrues Plaintiffs' Complaint, the TTRA, and this Court's precedent."[78]

In their reply, Defendants assert the TTRA does not "impose[] a mandatory

---

[75] Docket 15 at 15.

[76] Docket 15 at 15 (quoting *City of Tenakee Springs v. Franzel*, 960 F.2d 776, 779 (9th Cir. 1992)); 16 U.S.C. § 539d(a).

[77] Docket 15 at 15.

[78] Docket 31 at 20-30.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 17 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 17 of 35

legal requirement to provide a specific amount or type of timber for sale from the [Tongass]."[79]

As stated in Plaintiffs' opposition brief, the Court's analysis "[s]tart[s] 'with the specific statutory language in dispute.'"[80] The relevant portion of the TTRA provides as follows:

> Subject to appropriations, other applicable law, and the requirements of the [NFMA], . . . the Secretary shall, to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources, seek to provide a supply of timber from the Tongass National Forest which (1) meets the annual market demand for timber from such forest and (2) meets the market demand from such forest for each planning cycle.[81]

Plaintiffs focus on the statute's use of the word "shall."[82] They cite to Supreme Court and Ninth Circuit case law for the proposition that "the word 'shall' usually creates a mandate, not a liberty."[83] Plaintiffs further maintain that the statute's use of the phrase "'seek to provide' similarly directs the Defendants to take affirmative steps and seek to achieve the statute's demand that market

---

[79] Docket 38 at 10 (citing Docket 15 at 10-15).

[80] Docket 31 at 21 (citing *Murphy v. Smith*, 583 U.S. 220, 223 (2018)).

[81] 16 U.S.C. § 539d(a).

[82] Docket 31 at 21-22.

[83] Docket 31 at 21 (first citing *Murphy*, 583 U.S. at 223; then citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); and then citing *Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001)).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 18 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 18 of 35

demand for timber is provided."[84]   Unlike discretionary words such as "may," Plaintiffs assert that the statute's use of the phrases "shall" and "seek to provide" "underscores the mandatory nature of the duty."[85]

Despite several pages of briefing that focus on the word "shall," Plaintiffs selectively quote from the TTRA.[86]  The word "shall" must be read in the context of the entire sentence in 16 U.S.C. § 539d(a).  The clause immediately following shall—"to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources"—is a significant qualification on the statute's directive to "seek to provide a supply of timber."[87]  Moreover, 16 U.S.C. § 539d(a) does not impose any duty specific to old-growth timber, and in fact, the statute does not even mention old-growth timber.

Plaintiffs cite to two Ninth Circuit cases to maintain that "Ninth Circuit[] precedent confirms what the statute's text and context provide."[88]  In *Hoonah Indian Ass'n v. Morrison*, the Ninth Circuit upheld the Forest Service's finding that a timber sale in the Tongass was both "necessary" and "consistent with sound

---

[84] Docket 31 at 22.

[85] Docket 31 at 22 (citing *Murphy*, 583 U.S. at 223-24).

[86] Docket 31 at 21-22; *see* 16 U.S.C. § 539(d).

[87] *See* 16 U.S.C. § 539(d).

[88] Docket 31 at 23 (first citing *Hoonah*, 170 F.3d at 1225; and then citing *NRDC*, 421 F.3d at 801).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 19 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 19 of 35

principles for the management of the public lands" as required by ANILCA.[89] In its decision, the Ninth Circuit cited to the TTRA.[90]  According to Plaintiffs, "the Ninth Circuit found that the text [of § 539d] 'commands the Secretary of Agriculture to sell enough wood from the Tongass National Forest . . . to satisfy market demand.'"[91]  But the Court in *Hoonah* did not hold that the TTRA requires the Secretary to sell enough wood to meet market demand.  To the contrary, the Circuit Court in *Hoonah* quoted with approval its prior holding in *Alaska Wilderness Recreation and Tourism Ass'n v. Morrison* that 16 U.S.C. § 539d(a) "envisions not an inflexible harvest level, but a balancing."[92]  Indeed, in their opposition brief, Plaintiffs deleted the Circuit's inclusion of the phrase "subject to certain qualifications" in *Hoonah* and placed ellipses in its stead.[93]  Those qualifications are contained in § 539d(a) itself and expressly direct the Forest Service to be "consistent with providing for the multiple use and sustained yield of all renewable

---

[89] *Hoonah*, 170 F.3d at 1227-30 (citing 16 U.S.C. § 3120(a)(3)(B)).

[90] *Id.* at 1225-30.

[91] Docket 31 at 23 (citing *Hoonah*, 170 F.3d at 1225).

[92] *Id.* at 1227 (quoting *Alaska Wilderness Recreation & Tourism Ass'n. v. Morrison,* 67 F.3d 723, 731 (9th Cir. 1995) [hereinafter *Alaska Wilderness*] ("TTRA envisions not an inflexible harvest level, but a balancing of the market, the law, and other uses, including preservation. It thus gives the Forest Service leeway to choose among various site-specific plans, provided it follows the procedural requirements of the applicable statutes.")).

[93] *Compare Hoonah*, 170 F.3d at 1225 ("[The TTRA] commands the Secretary of Agriculture to sell enough wood from the Tongass National Forest, subject to certain qualifications, to satisfy market demand.") *with* Docket 31 at 14 ("Rather, it 'commands the Secretary of Agriculture to sell enough wood from the Tongass National Forest . . . to satisfy market demand.'" (quoting *Hoonah*, 170 F.3d at 1225)).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 20 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 20 of 35

forest resources."[94]  In sum, the Ninth Circuit did not hold in *Hoonah* that the TTRA

requires the Forest Service to meet market demand for timber from the Tongass.

Plaintiffs also cite *Natural Resources Defense Council v. United States*

*Forest Service* in support of their assertion that "the text [of the TTRA] places a

'unique duty' on [the Secretary of Agriculture] to seek to meet 'the market demand'

for timber.'"[95]  But the "unique duty" that the Circuit recognized in *NRDC* was not

to seek to meet the market demand for timber.  Rather, the Circuit held that in §

539(d), "Congress imposed a unique duty on the Forest Service to *consider* the

'market demand' for timber."[96]  To be sure, later in the decision, the panel writes,

"to satisfy the TTRA's earnest admonishment [regarding market demand] requires

the Forest Service to at least *consider* market demand and *seek* to meet market

demand."[97]  But this statement contains an important qualifier at its outset: "even

if hortatory."[98]  Under a fair reading of *NRDC*, the Ninth Circuit did not hold that the

---

[94] 16 U.S.C. § 539d(a). This aligns with other statutory provisions on the use of forest resources. *See, e.g.*, 16 U.S.C. § 531(a) (The multiple use and sustained yield principle requires that the National Forests are "utilized in the combination that will best meet the needs of the American people" even if "some land will be used for less than all of the resources," though there cannot be "impairment of the productivity of the land."); 16 U.S.C. § 531(b) ("Sustained yield . . . means the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the national forests without impairment of the productivity of the land.").

[95] Docket 31 at 23 (citing *NRDC*, 421 F.3d at 801).

[96] *NRDC*, 421 F.3d at 801 (emphasis added).

[97] *Id.* at 809 (emphasis in original).

[98] *Id.*

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 21 of 35

TTRA imposed a mandatory duty on the Forest Service to seek to meet the market demand for timber at the expense of the other competing interests that it is also mandated to consider. Rather, the Court held that "[t]his required duty, to assess market demand for timber, can be seen as a refinement of the general requirement under NFMA that the Forest Service consider timber harvest as one of the goals to be balanced with environmental preservation and recreational use."[99]

Defendants cite to two prior decisions from this Court as support for their position.[100] First, in 1995, the Court held that the TTRA did not create an enforceable duty to make timber available for harvest, but instead contained "an admonition to be considered together with other goals in establishing a timber plan for the Tongass."[101] And second, in 2001, the Court held that "[t]he 'seek to meet' market demand provision in the TTRA is discretionary."[102] The Court agrees with these holdings.

For similar reasons, the Court also finds Defendants' reliance on *American Forest Resource Council v. United States* persuasive.[103] In that case, the D.C.

---

[99] *Id.* at 801 n.7.

[100] Docket 15 at 16.

[101] *Alaska Forest Ass'n v. United States*, Case. No. J94-cv-007, slip op. at 1-2 (D. Alaska Oct. 19, 1995); Docket 15-5 at 1-2.

[102] *Alaska Forest Ass'n v. U.S. Dep't of Agric.*, Case. No. J99-cv-0013, slip op. at 28 (D. Alaska Mar. 30, 2001); Docket 15-4 at 28.

[103] *See* Docket 38 at 6, 8-9 (citing *Am. Forest Res. Council v. United States*, 77 F.4th 787 (D.C. Cir. 2023) [hereinafter *AFRC*]).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 22 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 22 of 35

Circuit held that "the total timber volume sold [by the BLM] comprises timber sales that can take years to finalize. The total timber volume the [agency] offers for sale in a given year is thus not a discrete agency action. Instead, it is a measurement—a synthesis of multiple sales made over several years."[104]

The Court finds that the Forest Service did not act *ultra vires* when it set a harvest level for Tongass timber that did not meet the annual market demand. As the Circuit held in *Alaska Wilderness,* the "TTRA envisions not an inflexible harvest level, but a balancing of the market, the law, and other uses, including preservation."[105] Nor, contrary to Plaintiffs' assertion, does the TTRA impose a mandatory duty on the Forest Service "to seek to ensure that market demand for timber from the Tongass is met—which includes seeking to provide old-growth timber if it is part of market demand."[106] The Forest Service clearly considered market demand; the 2016 Forest Plan and the ROD provide estimates of how much MMBF of timber the Forest Service expects the market will demand.[107] The TTRA vests the agency with broad discretion to achieve the objectives of the statute and cannot serve as the basis for compelling action under § 706(1); whether the harvest levels are designed to actually meet market demand is a

---

[104] *AFRC,* 77 F.4th at 804-05.

[105] *Alaska Wildernerss,* 67 F.3d at 731.

[106] *See* Docket 31 at 21.

[107] Docket 15-2 at 13-15 (Alternative 5).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 23 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 23 of 35

discretionary agency decision, not a mandatory requirement imposed by the TTRA on the Forest Service.

The Court now turns briefly to the major questions doctrine. Plaintiffs maintain that "Defendants exceeded their statutory authority under the major questions doctrine" when their "actions have threatened to eliminate a century-old industry in Southeast Alaska—an industry that Congress has sought to protect through legislation—without a clear statement from Congress."[108] In their reply, Defendants assert that the "[m]anagement of timber on federal lands on a single national forest in Alaska does not meet [the 'extraordinary cases'] standard [required under *West Virginia v. EPA*]."[109]

The major questions doctrine requires "Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'"[110] In *West Virginia v. EPA*, the seminal case on the major questions doctrine, the Supreme Court held that in the "extraordinary cases" where the doctrine applies, the agency "must point to 'clear congressional authorization' for the power it

---

[108] Docket 31 at 10.

[109] *See* Docket 38 at 17 ("But the major questions doctrine applies only in 'extraordinary cases' when 'the history and the breadth of the authority that [the agency] has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority.'" (quoting *West Virginia*, 597 U.S. 697, 721 (2022))).

[110] *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000)).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 24 of 35

claims."[111]  In the "extraordinary cases" that the Supreme Court has held presented a major question, the authority claimed by the agencies had nationwide repercussions and, for certain agency decisions, entailed costs in the billions of dollars.[112]

The Court finds the major questions doctrine inapplicable to this dispute. The extent of old-growth logging in the Tongass is not an issue of such national magnitude and consequence so as to warrant the application of the doctrine. And yet, the Court acknowledges that the extent of old-growth logging in the Tongass is a question of major significance to all Plaintiffs and Intervenor-Defendants in this case.[113]

Because Defendants do not have a mandatory duty under the TTRA to meet market demand for timber from the Tongass, there is no legal basis for Plaintiffs' *ultra vires* claim.[114]  Therefore, Defendants' motion to dismiss as to Count III is

---

[111] 597 U.S. at 723 (quoting *Util. Air Regul. Grp.*, 573 U.S. at 324). In *West Virginia*, the Supreme Court held that the EPA could not, for the first time, interpret "a long-extant statute" regarding emissions limits in a way that "entail[ed] billions of dollars in compliance costs" and would "empower[] it to substantially restructure the American energy market." *Id.* at 714, 723-25.

[112] *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 504 (2023) ("'A decision [to abolish $430 billion in student loans] of such magnitude and consequence' on a matter of 'earnest and profound debate across the country' must 'res[t] with Congress itself, or an agency acting pursuant to a clear delegation from that representative body.'" (quoting *West Virginia*, 597 U.S. at 735, 743)).

[113] Docket 1 at 12, ¶ 31; *see* Docket 1-1 at ¶¶ 5, 8, 14.

[114] The Court agrees with Defendants that Plaintiffs' reliance on *Al Otro Lado v. Executive Office for Immigration Review*, 138 F.4th 1102, 1120 (9th Cir. 2024), for the proposition that a failure to exercise a mandatory statutory duty is cognizable under § 706(1), is inapposite given the lack of an analogous mandatory statutory duty in this matter. Docket 38 at 7 n.1.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 25 of 35

Case 3:25-cv-00046-SLG     Document 44     Filed 03/12/26     Page 25 of 35

GRANTED.[115]

## II. Count II – Violation of the APA (Arbitrary and Capricious Action (5 U.S.C. § 706(2)(A)))

Count II alleges that (1) "[i]n refusing to follow the 2016 [Forest] Plan and amending the substantive requirements of that plan through guidance, the USDA and Forest Service have acted arbitrarily and capriciously"; and (2) "Plaintiffs relied on the 2016 [Forest] Plan. Yet that [2016 Forest] Plan was simply not followed"; "[b]y illegally deviating from the 2016 [Forest] Plan without considering Plaintiffs' reliance interests, Defendants have acted arbitrarily and capriciously."[116]

Although Count II of Complaint alleges Defendants acted arbitrarily and capriciously in violation of § 706(2)(A), both parties' briefing focuses on whether Defendants violated § 706(1) by "failing to take mandatory actions under the 2016 [Forest] Plan."[117]

Defendants seek dismissal of Count II because (1) Plaintiffs fail to identify a discrete agency action that the Forest Service is required to take; and (2) even if a discrete agency action was required, there is no binding commitment requiring Defendants to follow the timber sale projections set forth in the 2016 Forest Plan

---

[115] *See infra* Section IV.

[116] Docket 1 at 14-15, ¶¶ 42, 48; *see* Docket 14-15, ¶ 46 ("Defendants thus have 'acted in an "arbitrary" way by telling . . . one thing and then doing another.'" (citing *Kentucky v. EPA*, 123 F.4th 447, 452 (6th Cir. 2024))).

[117] Docket 31 at 30.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 26 of 35

that can be compelled under § 706(1) of the APA.[118]

As noted above,[119] in the 2016 Forest Plan and accompanying ROD, the Forest Service estimated "that an average of 46 MMBF of timber will be offered per year," an amount which the agency determined was "equivalent to the rate needed to meet the projected timber demand for the planning cycle."[120] Plaintiffs are correct that the amount of timber being offered for sale is considerably less than what was contemplated in the 2016 Forest Plan and the ROD.[121] However, whether that means "Plaintiffs have plausibly alleged that Defendants violated the APA by failing to take mandatory actions under the 2016 [Forest] Plan"[122] is the next step of the Court's inquiry.

In their motion to dismiss, Defendants maintain that the Complaint's "allegation cites estimates contained in the ROD, not a term of the Plan,"[123] estimates which Defendants contend are "at most aspirational 'will do' statements

---

[118] Docket 15 at 12-19.

[119] See *supra* notes 38-40.

[120] Docket 15-2 at 14 ("[U]nder Alternative 5 the Agency expects to sell an average of about 12 MMBF of young growth and 34 MMBF of old growth per year during the first 10 years. From Year 11 through Year 15, it expects to sell an average of 28 MMBF of young growth and about 18 MMBF of old growth per year. Alternative 5 is expected to reach a full transition of 41 MMBF of young growth about Year 16.").

[121] Docket 31 at 17; *see supra* notes 51-52 (explaining that the Forest Service offered 16.5 MMBF annually on average).

[122] Docket 31 at 30.

[123] Docket 15 at 18 (citing Docket 1 at 9, ¶ 23).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 27 of 35

that are not enforceable under Section 706(1)."[124]  Further, Defendants maintain

the 2016 Forest Plan's objectives related to old-growth timber are also "aspirational

objectives [which] are not enforceable obligations under [S]ection 706(2), much

less under [S]ection 706(1)."[125]

In their opposition brief, Plaintiffs assert that the "four timber harvest

objectives" in the 2016 Forest Plan "represent a discrete implementation decision"

that is enforceable under § 706(1).[126]  Plaintiffs also cite to the ROD's statement

that "these market demand conclusions are 'conservative and rational' and serve

to 'maintain[] a viable timber industry' while a transition to young growth timber

takes place . . . consistent with TTRA."[127]  Defendants dispute that the four timber

harvest objectives in the 2016 Forest Plan establish a "binding commitment in

terms of [a] plan" that permits "agency action [to be] compelled under 706(1)."[128]

In *Norton*, several environmental organizations sought to compel BLM to

implement a monitoring program of off-road vehicle ("ORV") use on federal lands

---

[124] Docket 15 at 18.

[125] Docket 15 at 18 (citing *In re Big Thorne Project*, 857 F.3d 968, 974 (9th Cir. 2017)).

[126] Docket 31 at 30-31 ("It is undisputed that the 2016 [Forest] Plan set forth four timber harvest objectives . . . . [that] specify, in precise terms, not only the annual volume of timber the Defendants must seek to provide, but also the proportions of old-growth and young-growth timber to meet that volume, alongside an exact 15-year timeline for implementation."); *see* Docket 15-1 at 259-60, 270-71.

[127] Docket 31 at 16-17 (citing Docket 15-2 at 29-30).

[128] Docket 15 at 14, 17 (citing *Norton*, 542 U.S. at 65, 69, 71-72).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 28 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 28 of 35

classified as wilderness study areas under § 706(1).[129]  BLM had issued a land use plan that stated the agency would monitor ORV use in the designated areas and close the areas to ORVs "if warranted."[130]  The Supreme Court held that the land use plan—"like other 'will do' projections of agency action set forth in land use plans"—was not enforceable under § 706(1) because it did not create "a legally binding commitment."[131]  The Court explained that "[q]uite unlike a specific statutory command requiring an agency to promulgate regulations by a certain date, a land use plan is generally a statement of priorities; it guides and constrains actions, but does not (at least in the usual case) prescribe them."[132]

Similar to the approximately 500-page 2016 Forest Plan here, the land use plan at issue in *Norton* was over 100 pages with multiple categories of resource management topics separately discussed.[133]  The Supreme Court held: "A statement by BLM about what it plans to do, at some point, provided it has the funds and there are not more pressing priorities, cannot be plucked out of context and made a basis for suit under § 706(1)."[134]  Much like BLM's land use plan in *Norton*, here, the "'will do' projections of agency action set forth in [the 2016 Forest

---

[129] *Norton*, 542 U.S. at 59-61.

[130] *Id.* at 68.

[131] *Id.* at 72.

[132] *Id.* at 71.

[133] *Id.* at 70.

[134] *Id.* at 71.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 29 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 29 of 35

Plan and related ROD] are not 'legally binding commitment[s] enforceable under § 706(1).'"[135]

Defendants cite to *In re Big Thorne Project*.[136] There, environmental organizations challenged a Forest Service logging sale in the Tongass, which the organizations alleged risked harm to wolf populations in the forest, and asserted that the relevant forest plan included a binding "wolf provision" concerning sustainability.[137] The Ninth Circuit rejected that argument and held that the provision in the plan directing the Forest Service to "[p]rovide, *where possible*, sufficient deer habitat capability to . . . maintain sustainable wolf populations" was "an aspiration, not an obligation."[138] Because "the [Forest] Service is *not* required to identify a specific 'mechanism' for securing viability," "the Service met its legal obligations."[139]

Based on *Norton* and *In re Big Thorne*, the Court agrees with Defendants that the 2016 Forest Plan "objectives reflect the aspirational steps to be taken and the resources to be used in achieving goals and desired conditions during the entire life of the [2016] Forest Plan" but are not actions the agency was required

---

[135] Docket 38 at 14 (first quoting *Norton*, 542 U.S. at 72; and then citing *Stout v. U.S. Forest Serv.*, 869 F. Supp. 2d 1271, 1280 (D. Or. 2012)).

[136] Docket 15 at 18 (citing *In re Big Thorne Project*, 857 F.3d at 974).

[137] *In re Big Thorne Project*, 857 F.3d at 972-73.

[138] *Id.* at 974 (alterations and emphasis in original).

[139] *Id.* at 975-76 (emphasis in original).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 30 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 30 of 35

to take that are legally binding commitments enforceable under either § 706(2)(A) or § 706(1) of the APA.[140]

Because the Court finds that the 2016 Forest Plan's timber sale objectives are not a legally binding commitment enforceable under the APA, the Court does not reach whether the stated objectives in the 2016 Forest Plan and associated ROD are sufficiently discrete to be amenable to compulsion under the APA.[141] For the foregoing reasons, Defendants' motion to dismiss as to Count II is GRANTED.[142]

### III.    Count I – Violation of the APA (Illegal Rulemaking and Failure to Act (5 U.S.C. § 706(1), (2)(C), (D); 16 U.S.C. § 1604(a)))

Count I alleges that "[t]he [2021] Southeast Alaska Sustainability Strategy—altering the substantive requirements of the 2016 [Forest] Plan—is functionally a rule that required notice and comment rulemaking"[143] and thus, its issuance without rulemaking violates the APA.[144] Plaintiffs' Complaint alleges that the 2021 Strategy made the following substantive changes to the 2016 Forest Plan: (1) "ending old-growth timber sales as mandated by the 2016 [Forest] Plan"; (2)

---

[140] Docket 15 at 18 (citing Docket 15-1 at 11, 318).

[141] *See Norton*, 542 U.S. at 72 ("We therefore hold that the [land use] plan's statements . . . are not a legally binding commitment enforceable under § 706(1). That being so, we find it unnecessary to consider whether the action envisioned by the statements is sufficiently discrete to be amenable to compulsion under the APA.").

[142] *See infra* Section IV.

[143] Docket 1 at 14, ¶ 39.

[144] Docket 1 at 13-14, ¶¶ 34-40.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 31 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 31 of 35

"removing the agency employees responsible for conducting NEPA analysis"; and (3) "fail[ing] to provide old-growth timber sales in line with the 2016 [Forest] Plan based on these actions."[145]

Defendants assert that Count I must be dismissed because the 2021 Strategy did not alter or amend any of the "conditions, goals, objectives, standards, or guidelines" of the 2016 Forest Plan.[146] Defendants further maintain "[t]he [2021] Strategy was simply not agency action, and any claim challenging it under [S]ection 706(2) fails."[147]

In their opposition, Plaintiffs maintain that "[b]y eliminating old-growth sales through what amounts to a press release, Defendants violated fundamental principles of administrative law" by not following proper rulemaking procedures.[148]

Although Plaintiffs maintain the 2021 Strategy "alter[ed] the substantive requirements of the 2016 [Forest] Plan," the Court disagrees.[149] First and foremost, as discussed above, the 2016 Forest Plan does not contain legally binding commitments; it contains objectives.[150] Moreover, the 2021 Strategy

---

[145] Docket 1 at 14, ¶¶ 39–40; *see also* Docket 31 at 25-26 (citing 16 U.S.C. § 1604(f); *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 897 (9th Cir. 2002)).

[146] Docket at 15 at 19-20.

[147] Docket at 15 at 20.

[148] Docket 31 at 10.

[149] Docket 1 at 14, ¶ 39.

[150] *See supra* notes 38-40.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 32 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 32 of 35

announcement did not end all old-growth timber sales; rather, it announced that the Forest Service "will end *large-scale* old growth timber sales on the Tongass."[151] The 2021 Strategy explicitly still allows for the harvest of some old-growth timber, albeit at levels significantly below what Plaintiffs seek.[152] As noted in their opposition brief, Plaintiffs were aware that as early as 2013, then-Secretary Vilsack called for timber harvesting in the Tongass to transition away from old-growth timber to young-growth timber.[153] The 2021 Strategy did not amend that objective or otherwise alter any provisions of the 2016 Forest Plan; rather, it reaffirmed the agency's announced timber harvesting policy for the Tongass going back to 2013.

Similarly, the 2016 ROD was "focused on accelerating the transition from a primarily old growth to a primarily young-growth timber program, and reducing plan-related impediments to renewable energy production."[154] The 2021 Strategy announced a reallocation of "management resources" by first, ending "large-scale old growth timber sales on the Tongass National Forest," and second, continuing to offer "[s]mall and micro old growth sales." These are substantially similar

---

[151] Docket 15-3 at 1 (emphasis added).

[152] The 2021 Strategy states that "[s]mall and micro old growth sales will still be offered for community consumption and cultural uses such as totem poles, canoes and tribal artisan use." Docket 15-3 at 1.

[153] Docket 31 at 14 ("In 2013, then-Secretary of Agriculture Vilsack issued [the Vilsack Memo], directing the Forest Service to assess the need for amending the 2008 Tongass Management Plan to transition the Tongass National Forest to a young-growth-based timber program over the next 10–15 years.").

[154] Docket 15-2 at 12.

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 33 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 33 of 35

objectives to the timber objectives and the young-growth timber objectives contained in the 2016 Forest Plan.[155]  To the extent the 2021 Strategy constituted an internal reallocation of resources, it nonetheless did not amend or otherwise alter any provision of the 2016 Forest Plan and thus APA rulemaking procedures do not apply.[156]

Because the announcement of the 2021 Strategy did not require the formal notice-and-comment rulemaking process, Plaintiffs have failed to state a claim upon which relief can be granted, and Defendants' motion to dismiss as to Count I, pursuant to Rule 12(b)(6), is GRANTED.[157]

## IV.    Futility of Amendment

When a court dismisses a complaint for failure to state a claim under Rule 12(b)(6), it should ordinarily grant leave to amend. Under Rule 15(a), courts "should freely give leave when justice so requires."[158]  However, a court may deny leave to amend when it would be futile.[159]  Amendment may be considered futile when the claims lack a cognizable legal basis[160] or when "no set of facts can be

---

[155] *See supra* notes 38-40.

[156] *See* 5 U.S.C. § 553; *Colwell v. Dep't of Health and Hum. Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009) ("[N]otice-and-comment is not required prior to issuance of 'interpretive rules, general statements of policy, or rules of agency organization, procedure or practice.'") (quoting 5 U.S.C. § 553(b)(A))).

[157] *See infra* Section IV.

[158] Fed. R. Civ. P. 15(a)(2).

[159] *Foman v. Davis,* 371 U.S. 178, 182 (1962).

[160] *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992).

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 34 of 35
Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 34 of 35

proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."[161]

Because no set of facts could be added by amendment consistent with each of the three Counts of the Complaint that could state a cognizable claim under the APA or the TTRA against Defendants, allowing leave to file an amended complaint would be futile.[162] Accordingly, Plaintiffs' Complaint as to all Counts must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss at Docket 15 is **GRANTED.** Plaintiffs' Complaint is dismissed with prejudice as to Counts I, II, and III.

The Clerk of Court is instructed to enter a final judgment for Defendants accordingly.

DATED this 11th day of March, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[161] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation and internal quotation marks omitted).

[162] *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile.").

Case No. 3:25-cv-00046-SLG, *Alaska Forest Ass'n, et al. v. U.S. Dep't of Agric., et al.*
Order on Motion to Dismiss
Page 35 of 35

Case 3:25-cv-00046-SLG    Document 44    Filed 03/12/26    Page 35 of 35